Ross *et al.* *v.* Banta.

No. 16,570.

## ROSS ET AL. *v.* BANTA.

EJECTMENT.—*Use in the Complaint of the Word "Property" for "Plaintiff."—Error Cured by Special Finding.*—An allegation that the defendant is in the unlawful possession of certain real estate, "and wrongfully detains the same from the possession of the property," will be construed to be that the defendant "wrongfully detains the same from the possession of the *plaintiff.*" If there be error in the use of the word "property," it can be cured by the special finding; but error in sustaining a demurrer to a good complaint can not be cured by such special findings.

DEFENSE.—*Evidence Under General Denial.—Demurrer to Bad Answer Overruled.—Special Findings.*—Under the general denial, every defense, either legal or equitable, can be given in evidence; and consequently it is a harmless error when a bad affirmative answer is held good, if the judgment is in favor of the plaintiff, and especially is this true where a special finding and conclusions of law are made containing a correct declaration of the law.

PRACTICE.—*Special Finding of Facts Outside of Issues, What are.—Outside the Scope of the Issues.*—Facts in a special finding or verdict are only outside of the issues when they are outside of the scope of the issues.

SAME.—*Right of Attorney to Appear in Cause.—Bill of Exceptions.*—A ruling of a trial court upon an attorney's right to appear in a cause can be presented on appeal only by a bill of exceptions.

BILL OF EXCEPTIONS.—*Unsigned.*—A bill of exceptions not signed by the judge of the lower court is no part of the record.

PLEADING.—*Counterclaim or Cross-Complaint, What is in an Action to Recover Real Estate.*—In an action to recover possession of real estate, a pleading filed by the defendant in which he claims title to the land and asks that the title be quieted, or any other affirmative relief, constitutes a counterclaim or cross-complaint.

JUDGMENT.—*Collateral Attack in Equity.*—A judgment may be collaterally attacked in equity where any fact exists which clearly proves it to be against conscience to execute the judgment, of which fact the injured party could not have availed himself in a court of law, and where he was prevented from doing it, by fraud or accident, without negligence on his part. A bill to enjoin a judgment at law is not regarded with favor by the courts.

SAME.—*Recovery of Real Estate on Former Judgment Which is Afterwards Reversed on Appeal.—Review.*—Where a plaintiff recovers possession of real estate solely by reason of a former judgment he had recov-

Ross *et al. v.* Banta.

ered, and such former judgment is afterwards reversed on appeal, it is a sufficient cause for a review of the judgment last rendered.

SAME.—*Injoining.*—*Relief at Law.*—A court of equity will not lend its aid by injunction against a judgment at law, or any other relief by injunction, where the party invoking such aid has a plain and adequate remedy at law.

SAME.—*Review.*—*Bacon's Ordinances in Chancery.*—The statute authorizing a review of a judgment for error of law or material new matter discovered since its rendition and within three years thereof, embodies substantially the ordinances in chancery of Lord Chancellor Bacon.

SAME.—*Transfer of a Right to Review a Judgment.*—*Case Overruled.*— A right of review of a judgment may be transferred by a conveyance of the property affected by such judgment; but if the grantee's grantor did not have such a right, such grantor can not claim it. *Walker* v. *Heller,* 90 Ind. 198, disaffirmed on this point.

SHERIFF.—*Sale by County Sheriff on Execution from Judgment in Supreme Court.*—*Notice of Sale, Signing.*—An execution issued on a judgment rendered in the Supreme Court, when executed by a sheriff of a county, is executed by him as the deputy of the sheriff of the Supreme Court; but he signs his name to return of process or on notices of sale as sheriff of the county.

EXECUTION.—*Sale of Real Estate.*—*Irregular Notice.*—A slight irregularity in the sale of real estate, such as an irregularity in the notice of sale, where no injury is shown to have resulted to the execution defendant, will not render the sale invalid.

SAME.—*Appraised Value, What is.*—*Failure of Appraisers to Deduct Amount of Liens.*—The appraised value of real estate for the purposes of sale on execution, is its value after all valid liens have been deducted; and if the sale is with relief, such real estate need only sell for two-thirds of such remainder. A failure of the appraisers to state what that remainder is, after having given the value of the real estate and the amount of the liens, is immaterial.

EXEMPTION.—*Setting Off Property a Ministerial Act.*—The act of the sheriff in setting off property claimed as exempt is purely a ministerial act.

SAME.—*Costs.*—As against a judgment for costs there is no right of exemption.

ESTOPPEL.—*In Pais, When not Applicable.*—*Expression of an Opinion.*— The doctrine of estoppel *in pais* has no application where everything is equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was not influenced by the acts pleaded as an estoppel. A mere expression of an opinion as to the rights of a party does not create an estoppel.

Ross *et al. v.* Banta.

SUPREME COURT PRACTICE.—*Reversal.*—*Special Findings.*—*New Trial.*— If it appear from the special findings in the record that a different result could not be brought about by a new trial, the Supreme Court will order the lower court to enter the proper judgment on such findings.

From the Cass Circuit Court.

*G. E. Ross,* for appellants.
*D. P. Baldwin,* for appellee.

McCABE, C. J.—Appellee sued the appellants in the court below to recover possession of lots 5 and 6 in D. D. Dykeman's first addition to Logansport, Cass county, Indiana. Issue, trial by the court, special finding, conclusions of law and judgment thereon for appellee.

This was the second trial of the cause. On the first trial, the appellants recovered judgment. A new trial as a matter of right under the statute was granted the appellee, resulting in a judgment, as above stated, in his favor.

There are twenty assignments of error by appellants, and nine assignments of cross-error by the appellee. Many of these assignments we shall find it unnecessary to examine.

The first assignment questions the overruling of a demurrer to the complaint. The complaint is in the usual statutory form, except that instead of alleging, as the statute provides, that "the defendant unlawfully keeps him out of possession," it alleges that the defendants are in the unlawful possession of said real estate, and wrongfully detain the same from the possession of said *property.*"

If the pleader intended to use the word property, it would clearly make the complaint bad, because section 1054, R. S. 1881, imperatively requires in such a complaint the allegation "that the defendant unlawfully

keeps the plaintiff out of possession," or its equivalent. *Second Nat'l Bank, etc.,* v. *Corey,* 94 Ind. 457; *Mansur* v. *Streight,* 103 Ind. 358; *Simmons* v. *Lindley,* 108 Ind. 297.

But it appears clearly enough that the pleader intended to use the word "plaintiff" in the place where he has used the word "property." The civil code requires us to regard the complaint as having been amended in that respect. R. S. 1881, sections 396, 398, 658.

Besides, there was a special finding in this case, and if it supplied or found the existence of the fact missing or wanting in the complaint, or if it failed to so find, in either case, the ruling on the demurrer would be harmless, because in either event a correct declaration of the law upon the facts found would reach the same legal result as would have been reached with a correct ruling on the demurrer, or with the defect in the complaint obviated by an amendment.

We are not unmindful of the rule that forbids consideration of facts in a special finding or verdict that are outside of the issues. Facts in a special finding or verdict may, in a case of this kind, be said to be outside of the issues only when they are outside of the scope of the issues; otherwise there could be no such thing as a verdict curing a defective complaint. The missing fact in the complaint was within the scope of the complaint, because the complaint being for the recovery of the possession of real estate under the statute, the allegation that the defendant unlawfully keeps the plaintiff out of possession was within the scope of the complaint, though that direct averment was not made.

Where a good complaint is held bad a different result must follow. A special finding or verdict could not either cure or render the error harmless, because the facts in such pleading, even if they found their way into

the special finding or verdict, could not be considered for any purpose. Such facts in such a case would not only be outside of the issues but outside of the scope of the issues. It is clear, therefore, that the overruling of the demurrer to the complaint was a harmless error, if error at all. *State, ex rel.,* v. *Vogel,* 117 Ind. 188; *Martin* v. *Cauble,* 72 Ind. 67; *Douthit* v. *Douthit,* 133 Ind. 26; *Reddick* v. *Keesling,* 129 Ind. 128.

There were seven paragraphs of answer setting up affirmative matter, besides the general denial. There were nearly as many affirmative paragraphs of reply. Many errors and cross-errors are assigned on rulings on demurrers to the affirmative answers and replies. The answer of general denial authorized every defense to be given in evidence which appellants had, either legal or equitable. In such a case a bad affirmative pleading held good is harmless, because when its facts are found in the special finding or verdict a correct declaration of the law arising on such facts puts the injured party in the same attitude he would have occupied had the pleading been held bad on the demurrer, and a good affirmative pleading held bad on demurrer in such a case is harmless, because its facts were still admissible under the general denial. See authorities last cited. Therefore, rulings as to the sufficiency of answers or replies, even though erroneous, were harmless errors whether committed against appellant or appellee. The next error urged is the refusal of the court below to require the appellee's attorney to produce and prove his authority to prosecute the action under section 970, R. S. 1881. This was such a motion as required a bill of exceptions to present it to this court. There is a paper copied into the transcript in the form of a bill of exceptions purporting to set forth the motion and the action of the court thereon, but it is not signed by the judge. There-

fore, there is no question presented to this court as to such refusal of the court to require appellee's attorney to prove his authority to act. There was a demurrer sustained to the cross complaint of appellant, Ross, and the correctness of that ruling is the next question presented. It is insisted that as the same facts could have been given in evidence under the answer of the general denial, sustaining the demurrer to the cross-complaint was harmless, if even it was error.

It is true the facts set up in the cross-complaint, if sufficient to constitute a cause of cross-action, are also sufficient in this case to constitute a defense to the original action, and, so far as that defense is concerned, we have already seen that it was a harmless error to hold the cross-complaint bad ; but the very object in pleading the facts in the form of a cross-complaint is to accomplish something more than the mere defeat of the original action. It is to secure affirmative relief, such as quieting the cross-complainant's title, or that which is the same thing, to enjoin the other party from setting up title to the premises through a certain judgment, founded on another judgment. That was asked in this case, and restitution and other relief also were asked in the cross-complaint, neither of which could have been granted on a mere defeat of the ejectment suit.

In an action to recover possession of real estate, as was the case here, a pleading filed by the defendant in which he claims title to the land and asks the title to be quieted, or any other affirmative relief, constitutes a counterclaim. *Tabor* v. *Mackkee*, 58 Ind. 290; *Wilson* v. *Carpenter*, 62 Ind. 495.

In such a case the matter set up in the counterclaim or cross-complaint, while it may defeat the original action, like a mere defense, its purpose is to go beyond a mere defense and afford to the cross-complainant affirma-

tive relief, which is more than a mere defeat of the original action. *Harness* v. *Harness*, 63 Ind. 1; *Jones* v. *Hathaway*, 77 Ind. 14; *Branham* v. *Johnson*, 62 Ind. 259.

The cross-complaint was, in substance, as follows: "The defendant, George E. Ross, by way of cross-complaint against the plaintiff, Henry J. Banta, says: That on the 8th day of February, 1875, and for more than five years prior thereto, one Catherine Peters was the owner of the lots in complaint mentioned, describing them; that for the years 1873 and 1874 taxes were regularly assessed against said lots in the sum of $50, which became delinquent, for which the county treasurer sold them to one Joseph Uhl for $53.27, to whom a proper certificate was issued by the auditor of said county, and, there having been no redemption at the proper time, a deed was duly executed to him for said property pursuant to said sale; that Uhl remained in possession until July 4, 1881, when he sold and conveyed it to one Margaret Sheehan, who afterwards intermarried with one Andrew J. Ream; that she died in 1889, intestate, leaving surviving her as her only heir at law her husband, Andrew J. Ream, who conveyed said lots to cross-complainant by deed February 27, 1890; that said Uhl had, while he held the tax title aforesaid, and on February 24, 1879, recovered judgment in the superior court of Cass county, Indiana, against said Catherine and Abraham Peters, her husband, quieting his title to said property under said tax deed; that said Margaret Ream took and held possession of said property from July 4, 1881, until her death, and her husband until his conveyance to the cross-complainant; that said Uhl and Ream paid $400 taxes on said property under said tax sale, which, with interest and penalties to this date, amount to $2,000; that said Banta claims some interest in or

title to said property as follows, viz.: That in the year 1873 Abraham Peters and Catherine Peters executed a mortgage upon said property, and also on lot 4 of the same addition, also owned by said Catherine, to one Timothy Crawley, who, on December 23, 1878, recovered judgment of foreclosure thereof in the superior court of said Cass county against said Abraham and Catherine Peters, who were the only parties defendant in said judgment; that said Crawley, on the 27th of January, 1879, assigned said judgment to one Alexander S. Guthrie; that on the —— day of August, 1880, said lots 4, 5 and 6 were sold by the sheriff of said Cass county to satisfy said judgment in foreclosure at which sale said Guthrie became the purchaser; that on the —— day of ——, 188—, said Guthrie conveyed lot 6 aforesaid to said Banta, and afterwards conveyed to said Banta said lots 4 and 5; that afterwards said Guthrie and Banta jointly sued said Catherine and Abraham Peters and Margaret Sheehan in the circuit court of said county to set aside said sheriff's sale, on the ground that the sale had been made without relief, while the judgment was subject to relief from valuation and appraisement laws, asking also that the tax title of said Margaret Sheehan be set aside and they be permitted to redeem from the same; that said suit resulted in favor of said Guthrie and Banta, setting aside said sheriff's deed and directing a resale of said property against all said defendants under the original decree of foreclosure; that said Margaret Sheehan appealed from said latter judgment to the Supreme Court where said judgment was reversed and set aside March 14, 1889; that pending said appeal said Guthrie and Banta caused said property to be resold, on January 2, 1886, by the sheriff of said county, pursuant to said judgment ordering a resale, said Banta becoming the purchaser of said

lots 5 and 6 at said resale, and afterwards received a sheriff's deed therefor; that on the 27th day of January, 1887, said Banta commenced suit against said Abraham and Catherine Peters and said Margaret Ream (nee Sheehan) for possession of said lots 5 and 6, and, in his abstract of title filed with his complaint, set forth that he derived his title through said sheriff's sale and deed to said Guthrie, and also through said sheriff's sale made January 2, 1886, aforesaid; that to this complaint and abstract of title said Ream answered that she was the owner and in possession of said property under said tax sale aforesaid, specifically setting out said title, also that she was the owner of said property under said sale aforesaid, and that she and her grantor had been in possession of said property thereunder since 1875, and that the cause of action sued on did not accrue within five years before the commencement of said action; and further that said Banta bid at said sale of January 2, 1886, $1,-645.44, for which said sheriff had sold the property to him, but that he had not paid said bid up to the commencement of said action, each of which answers was held good by the court, and sufficient to defeat said action; that to these several answers and defenses said plaintiff replied first by general denial, and second affirmatively that the matters and things pleaded in these special answers had been passed upon and adjudicated by and in said judgment of the Cass Circuit Court rendered October 19, 1886, aforesaid; that said cause was taken, on change of venue, to the Pulaski Circuit Court, where, upon the issues so formed, a trial was had and a special verdict was returned by the jury under the issues aforesaid; that said jury, in their verdict, found the rendition of said original judgment in foreclosure, the sale thereunder to said Guthrie in August, 1880, the set-

ting aside of said sale by the Cass Circuit Court in October, 1885, the resale under said last judgment in January, 1886, the issuing of the sheriff's deed on said sale in January, 1887, the commencement of said action in ejectment, and that said defendants were in possession of said property and retained possession thereof during the year next after said sale, and that the title and interest of said Margaret Sheehan in and to said property had been tried and determined against her in said action brought by said Guthrie and Banta against her and others, and in which said judgment was rendered in October, 1885, as aforesaid, and cross-complainant avers that upon these facts, so found by the jury, and which were the only facts found by said jury of title in said Banta and the only right he had to possession of said property, said Pulaski Circuit Court on the —— day of May, 1887, rendered judgment in favor of said Banta for possession of said property; that upon said judgment a writ of possession was issued to the Sheriff of Cass county, Indiana, who on the —— day of ———, 1890, executed said writ by ejecting said Abraham and Catherine from said property and all other persons mentioned in said writ and delivered up possession of said property to said Banta. And the cross-complainant avers that said Banta has no title or right to the possession of said property other or different from that above specifically set out.

Wherefore cross-complainant asks the following relief, viz.:

"1. That as a grantee of Margaret Ream he have restitution of said property.

"2. That said Banta be forever enjoined from setting up any title to said property or right to the possession thereof under said judgment of the Pulaski Circuit Court, rendered May, 1887.

"3. That he account for the rents and profits of said property, and

"4. All other proper relief."

It is earnestly contended that this cross-bill is not sufficient, because Ross having purchased from Ream's heir, who inherited from her since the recovery of the judgment against her and others for the possession in the Pulaski Circuit Court, he, it is claimed, is as much bound by that judgment (so far as this property is concerned), as if he had been one of the defendants in that judgment. And so we hold that he is as much bound by that judgment (so far as it affects his title to this property), as if he had been one of the defendants therein.

Therefore, if Margaret Ream (through whom Ross claims title, and who was a defendant in the Pulaski Circuit Court judgment), could maintain a bill to enjoin that judgment had she lived and retained her title, then Ross can do the same, as he is her successor in the title; and, on the other hand, if she could not maintain such bill, then Ross can not.

The cross-complaint in this case is in effect a bill to enjoin the Pulaski Circuit Court judgment, among other things. Does it state facts sufficient to warrant that relief? Appellee contends that it does not, because it is a collateral attack upon a judgment of a court of competent jurisdiction, and cites *Pierce* v. *Banta*, 9 Ind.App. 376, in support of that proposition. That case lends some sanction to that contention, though it was not a suit to enjoin.

Appellee's counsel assume that there can not be a collateral attack on a judgment in any case. While it is true that a judgment can not be collaterally impeached in an action at law, yet it is equally true that a judgment may be collaterally attacked in a suit in equity where any fact exists which clearly proves it to be against conscience to execute the judgment, and of

which the injured party could not have availed himself in a court of law, or which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents. High Inj., Sec. 114; *Hogg* v. *Link*, 90 Ind. 346; *Walker* v. *Heller*, 90 Ind. 198; *Harman* v. *Moore*, 112 Ind. 221.

The cross-complaint being in the nature of a suit in equity to enjoin a judgment at law, that the attack thereon is collateral is no objection to the maintenance of such suit. In *Walker* v. *Heller, supra,* very nearly the question here under consideration was decided by this court in favor of appellants' contention. In that case a suit on a note was tried, resulting in a finding for the defendant, which was entered of record; afterward the court permitted the plaintiff, over objection, to dismiss his suit before judgment on the finding, from which the defendant appealed to this court, where the judgment of dismissal was reversed, with instructions to the trial court to enter judgment upon the finding in favor of the defendant, which was accordingly done on the return of the case to the trial court. Pending the appeal, and before the decision thereof, the plaintiff brought another action on the note, and recovered judgment before the reversal in the other case. After the reversal and entry of judgment for the defendant on the return of the case from the Supreme Court, the defendant brought suit to enjoin the judgment recovered pending the appeal, which injunction was refused in the trial court, but this court reversed that ruling. It is there said: "It is well settled that a court of equity will restrain proceedings upon a judgment at law, where its enforcement is against conscience, and the same has been recovered by an unfair advantage. Wherever, by accident, mistake, fraud or otherwise, an unfair advantage has been obtained in

proceedings at law, and it is against consience to make use of such advantage, a court of equity will restrain the party from making use of the same; and after judgment any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not avail himself in defense of the suit, will authorize the court to interfere by injunction and restrain the party from enforcing the judgment."

The case made here for the interposition of equity is much stronger than the case from which we have quoted. There, there were two judgments on the same cause of action, one in favor of one of the parties and the other in favor of the other, and equity interposed in favor of the party who last recovered, though he should have been the first to recover. But here is a case where a party has recovered a judgment for the possession of real estate on a title established wholly and solely by a judgment which was the only evidence of title, which judgment has been overthrown by an unqualified reversal.

Embry, Admr., brought suit in the Supreme Court of the district of Columbia, against Stanton and Palmer, and recovered judgment for $9,185.18.   He brought suit on that judgment in a State court of Connecticut.   Thereupon they filed their petition in equity in the same court, the object and prayer of which were to obtain a perpetual injunction restraining him from prosecuting his action upon that judgment or in any manner enforcing it against them, setting forth the reasons therefor.   The judgment was enjoined in the State court, which was, on appeal to the State Supreme Court, affirmed, and Embry appealed to the Supreme Court of the United States. (*Embry* v. *Palmer*, 107 U. S. 3)

That court in that case said:   "The question ' then arises, what causes would have been sufficient in the District of Columbia, according to the law then in force,

to have authorized its courts to set aside the judgment recovered there by Embry against Stanton and Palmer? This is answered by the decision of this court upon the point, in the case of *Marine Insurance Co. of Alexandria* v. *Hodgson,* 7 Cranch, 332.

"That was a bill in equity, filed in a court of the District of Columbia, perpetually to enjoin the collection of so much of a judgment at law recovered in the District as was in excess of an amount claimed to be the sum equitably due. The grounds of relief alleged were that a fraud had been practiced upon the underwriters in a valued policy of marine insurance, by an overvaluation of the ship, and that the complainant had been prevented from making the defense at law.

"Chief Justice MARSHALL, delivering the opinion of the court, affirming the decree of the court below dismissing the bill, stated the rule as follows: 'Without attempting to draw any precise line to which courts of equity will advance, and which they can not pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. On the other hand, it may with equal safety be laid down as a general rule, that a defense can not be set up in equity, which has been fully and fairly tried at law, although it may be the opinion of that court, that the defense ought to have been sustained at law. * * * This was held to be the law prevailing in the District of Columbia, not by reason of

any local peculiarity, but because it was a general principle of equity jurisdiction.

"It was repeated in *Hendrickson* v. *Hinckley*, 17 How. 443, where the rule was condensed by Mr. Justice CURTIS into the following statement: 'A court of equity does not interfere with a judgment ·at law, unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents.' *Creath* v. *Sims*, 5 How. 192; *Walker* v. *Robbins*, 14 How. 584, and in *Brown* v. *County of Buena Vista*, 95 How. 157.

"This is the doctrine recognized and applied by the Supreme Court of Errors of Connecticut in the case of *Pearce* v. *Olney*, 20 Conn. 544. That was a bill in equity to restrain the collection of a judgment recovered in New York, upon the ground that the complainant had a good defense at law to the action, which he was prevented from making by the fraud of the defendant. It was there said by the court: 'It is well settled that this jurisdiction will be exercised, whenever a party, having a good defense to an action at law, has had no opportunity to make it, or has been prevented by the fraud or improper management of the other party from making it, and by reason thereof a judgment has been obtained which it is against conscience to enforce.'"

Such is the general current of authority touching the power of a court of equity to enjoin judgments at law, being in full harmony with the principles announced by this court in *Walker* v. *Heller*, *supra*.

But there was one consideration this court lost sight of in the decision of that case, and that is the effect the civil code establishing the reformed system of procedure has had on the right to maintain·a suit to enjoin a judg-

ment at law such as the one upheld in that case. It is a well settled principle that the jurisdiction in equity to enjoin a judgment at law in proper cases, although well established, is not regarded as a favorite one with courts of equity. A bill seeking relief of this nature is scrutinized with extreme jealousy, and the grounds upon which the interference will be allowed are confessedly somewhat narrow and restricted. 1 High Inj., section 113.

Another well established principle of equity is that courts of equity will not lend their aid by injunction against judgments, or any relief by injunction, where the party invoking such aid has a plain and adequate remedy at law. 1 High on Injunctions, section 173; *Thatcher* v. *Humble*, 67 Ind. 444; *Bishop* v. *Moorman*, 98 Ind. 1; *Baragree* v. *Cronkhite*, 33 Ind. 192; *Schwab* v. *City of Madison*, 49 Ind. 329; *Sims* v. *City of Frankfort*, 79 Ind. 446; *Allen* v. *Winstandly*, 135 Ind. 105.

Did the appellant Ross have an adequate remedy at law? Margaret Ream (nee Sheehan) died, as cross-complainant avers, in 1889, leaving Andrew J. Ream, her husband, as her sole heir at law, who conveyed to appellant Ross, February 27, 1890, and that the judgment for a resale of the lots which was the sole producing cause and foundation of the Pulaski Circuit Court judgment, was reversed by this court on March 14, 1889. When Margaret Ream died, she had a right to maintain a complaint to review the Pulaski Circuit Court judgment on account of the reversal of the judgment for a resale, if that reversal had taken place before her death, and that right would have descended to her heir, Andrew J. Ream, cross-complainant's grantor, under the statute, as we shall hereinafter see.

Whether she died before or after the 14th of March, 1889, the date of reversal, is not stated, though it is

stated that she died in that year. The reversal of that judgment constituted material new matter for which the statute authorizes a judgment to be reviewed and reversed. The statute authorizes the review of a judgment for error of law appearing in the proceedings and judgment within one year, or for material new matter discovered since the rendition thereof within three years. R. S. 1881, section 616.

When the jurisdictions of law and equity were separate, and before the adoption of our reformed procedure, bills of review were maintainable only for relief against decrees in equity, and they could not be maintained to secure relief from judgments at law such as the Pulaski Circuit Court judgment was. 1 Pom. Eq. Jur., section 51; Story's Eq. Pl., sections 404, 405 and 406.

Prior to the adoption of the new system, a bill to enjoin that judgment would have been maintainable because that would have been the only remedy. The ordinances in chancery of Lord Chancellor Bacon, which have never been departed from, authorized a bill to review only decrees in chancery for error appearing on the face of the record, and for new matter discovered since the rendition of the decree. This section of the civil code last above cited extends that same right to all judgments, whether in the nature of a judgment at law or a decree in equity. It embodies substantially the ordinances in chancery above mentioned, and extends them to all judgments.

The section 615 of the code above referred to, however, limits the right to review to a party to any judgment, and the heirs, devisees or personal representatives of a deceased party.

The appellant Ross was not a party to the Pulaski Circuit Court judgment, but he is a purchaser of the title of Margaret Ream, who was a party, after her death, from

her heir, after the cause for review of that judgment had arisen, namely, after the reversal of the judgment for a resale of said lots. His grantor, Andrew J. Ream, therefore, being an heir of one of the parties to the Pulaski Circuit Court judgment, and having conveyed to appellant Ross after the judgment for resale had been reversed, he, as such heir, had a right, at the date of such conveyance, to maintain a suit to review said Pulaski Circuit Court judgment for and on account of the new matter caused by such reversal, and hence, having such legal remedy, he had no right to maintain a suit to enjoin the Pulaski Circuit Court judgment, and by the conveyance to appellant Ross of all his rights, he must be held to take such rights subject to all the equities such rights were subject to in the hands of his grantor, and one of those equities was that said grantor, Andrew J. Ream, as heir of Margaret Ream, his wife, had the right to review the Pulaski Circuit Court judgment, and because he had that legal remedy had no right to maintain a suit to enjoin that judgment, and for that reason appellant Ross has no right to maintain a suit to enjoin it.

We disapprove of the conclusion reached in *Walker* v. *Heller, supra,* because in that case the injured party was a party to the judgment sought to be enjoined, and he had a right to maintain a complaint to review that judgment for the new matter arising out of the reversal of the judgment of dismissal and the subsequent judgment rendered pursuant to the order of this court on such reversal, and hence he had an adequate remedy at law which ought to have precluded him from maintaining the suit to enjoin. This consideration escaped the attention of this court when that case was decided. But the principles announced in that case are correct as applied to a proper case. We, therefore, conclude that the court be-

low did not err in sustaining the demurrer to the cross-complaint.

The appellant, Ross, in his defense under the general denial, set up another and different title in himself to said lot six through a sheriff's sale to himself. The court below, in its ninth finding of facts, finds that from the judgment ordering a resale of said lots, as above stated, Peters and Margaret Sheehan appealed to the Supreme Court, without bond, where said judgment was in all things reversed on the 14th of March, 1889 (119 Ind. 44), and on the 11th day of May, 1889, said Supreme Court rendered a judgment in said cause in favor of said Peters. and Sheehan and against said Alexander S. Guthrie and Henry J. Banta in the sum of $55.75 as costs made by said appeal in said court; that upon said judgment for costs in the Supreme Court an execution was, in due form, on July 27, 1889, issued by the clerk of said Supreme Court to the sheriff of the Supreme Court, commanding him to collect the amount of said judgment, interest and costs out of the property of said Alexander S. Guthrie and Henry J. Banta; that said sheriff of the Supreme Court delivered said execution to John Donaldson, sheriff of Cass county, Indiana, for collection, and said Donaldson, as such sheriff, on August 27, 1889, levied said execution upon all the right, title and interest of said Guthrie and Banta in and to lots 5 and 6 in D. D. Dykeman's first addition to the city of Logansport, Indiana; that on July 1, 1889, said Banta received from the United States Government an appointment as physician to the Marcorelo Indians, at Marcorelo, in the territory of New Mexico, and left Indiana early in July, 1889, and has remained in New Mexico ever since, being engaged in said government service.

He left this State with the intention of returning

thereto, and such has ever since been his intention, when his said service shall terminate. At and prior to the time of leaving Indiana, he was a resident householder of Cass county, Indiana.

In August, 1889, prior to the said levy, the wife of said Banta stored a part of their household goods in Logansport, Indiana, and took another part and her children with her to her husband, and since that time she and her husband have been keeping house in New Mexico, and have not since that time been keeping house in the State of Indiana. Though a resident of this State and only temporarily absent therefrom in said government service, he has not, since leaving Indiana, been a householder therein, but has been a householder in said territory of New Mexico. Before the day fixed for the sale of said real estate under said execution, said Donaldson, as such sheriff, caused the same to be duly appraised, the form of appraisement of the fee-simple of said lots being as follows: ''We appraise the fee-simple interest, if they own it, of A. S. Guthrie and Henry J. Banta in and to lots 5 and 6 at $1,500, deducting the following liens and incumbrances: Mortgage to D. P. Baldwin, $200; tax title to Margaret Sheehan, $900; total, $1,100. We appraise the fee-simple of A. S. Guthrie, if he owns it, in lot 5, D. D. Dykeman's 1st addition, $400; in lot 6, in D. D. Dykeman's 1st addition, $1,100. We appraise the fee-simple interest of H. J. Banta, if he owns it, in lot 5, D. D. Dykeman's 1st addition, $400; in lot 6, D. D. Dykeman's 1st Addition, $1,100.'' The appraisers also appraised the rents and profits of each of said lots for each year for seven years, and made proper affidavit as to the correctness of their appraisement.

After the appraisement was made, Banta's attorney produced and handed to said Donaldson, as such sheriff, Banta's schedule and affidavit for exemption, and named

his appraiser to said sheriff, and demanded of said sheriff that his property be appraised and set off to him under the $600 exemption law of Indiana. The schedule set forth his personal property and the real estate in controversy, and attached thereto was an affidavit made by said Banta, setting forth that the same was all his real estate and personal property within or without the State of Indiana; all his money on hand or on deposit within or without the State of Indiana, rights, credits, choses in action, and all personal property of every description whatever belonging to him or in which he had any interest on the 27th day of July, 1889, showing what he had sold since that date, the amount he had received therefor and how he had disposed of the proceeds.

The sheriff, after receiving said schedule and affidavit without appraising the personal property, and without making any other appraisement of the real estate than that hereinbefore mentioned, did, as he states in his return to said execution, "Set off to Henry J. Banta, as exempt from execution, all the personal property named and described in his affidavit; also lot 5 in D. D. Dykeman's first addition to Logansport, as appraised in the valuation law inventory heretofore made."

After having duly advertised said lot 6 for sale at sheriff's sale, under said execution from the clerk of the Supreme Court, the advertisement being signed not by the sheriff of the Supreme Court but by John Donaldson, sheriff of Cass county, Indiana, by M. J. Gallagher, deputy.

Said sheriff of Cass county, on September 28, 1889, sold at sheriff's sale all the right, title and interest of said Guthrie and Banta in and to said lot 6 to the defendant Ross, for the sum of eighty dollars, that being more than two-thirds of the appraised value of said lot, over and above the incumbrances thereon. After the

year for redemption had expired and there having been no redemption from said sale, the sheriff of the Supreme Court, on the 24th day of October, 1890, executed, acknowledged, and delivered to said Ross a sheriff's deed for said lot 6, upon the sale thereof made as aforesaid, which deed has never been recorded.

The conclusions of law relative to the validity of the sheriff's sale and deed to appellant Ross are as follows:

"5. That defendant Ross has no title to said lot 6 by virtue of the sheriff's sale under said execution issued by the clerk of the Supreme Court, for the reason that the plaintiff was entitled to his exemption, and such exemption was denied him.

"7. That the plaintiff is entitled to recover possession of the real estate in controversy against all the defendants, and also to recover for the use of the premises, as against the defendant Ross, the sum of $167, less $55.75, with 6 per cent. thereon paid by said defendant Ross September 28, 1889, on the purchase of said lot 6 on said execution issued by the clerk of the Supreme Court, leaving due the plaintiff $106.25."

We think the court below erred in these conclusions of law. The facts found show that Banta, though a resident of Indiana in law, yet that he was not a householder in this State, but was a householder in New Mexico at the time he demanded his exemption and when the sheriff's sale to appellant Ross took place. It is unnecessary to decide, and we do not decide, whether appellee Banta was a resident householder within the meaning of the language of the statute, R. S. 1881, section 703.

The conclusion of law was wrong for another reason. The execution, from a sale on which exemption was claimed, was for the collection of judgment for costs on the reversal of the judgment already mentioned ordering a resale of the lots in question. Such a judgment, it

has been held, is not a " debt growing out of or founded upon a contract, express or implied," and, therefore, not within the exemption statute. *State, ex rel.,* v. *Mc-Intosh,* 100 Ind. 439; *Russell* v. *Cleary,* 105 Ind. 502.

The exact question under consideration was decided by the Appellate Court in favor of the contention of appellant Ross in *Donaldson, Sheriff,* v. *Banta,* 5 Ind. App. 71. The appellee, Banta, sued the sheriff, Donaldson, for refusal to allow him his exemption from said execution, and recovered in the trial court, but Donaldson appealed and the Appellate Court reversed the judgment, holding that Banta was not entitled to any exemption from said execution, it being for costs.

The sheriff's sale to appellant Ross is vehemently assailed by appellee's counsel for other and different reasons than those assigned for holding it valid by the court below in its conclusions of law. As the only reason stated in those conclusions for the invalidity of the sheriff's sale to appellant Ross was that Banta was entitled to exemption, which the sheriff had refused him, it might be taken as an implied conclusion of law that there was no other legal objection to said sale and deed.

The conclusion against the validity of that sale is attempted to be supported by contending that the sale was invalid because the notice thereof was signed by the sheriff of Cass county in his official capacity as such sheriff, and not as the deputy of the sheriff of the Supreme Court, and that while the sale was made by the sheriff of Cass county, as such, the deed was executed by the sheriff of the Supreme Court.

The statute provides that "When any process, rule, or order shall come into the hands of such sheriff (of the Supreme Court), he may transmit the same by mail to the sheriff of the county where the same is to be served.

The sheriff of each county shall be his deputy, but shall be liable on his own bond for all acts done by him as such deputy." R. S. 1881, section 5834.

The advertisement of the sale would naturally describe the process as an execution issued by the clerk of the Supreme Court to the sheriff of the Supreme Court, which such sheriff had delivered to the sheriff of the county. No complaint is made against the advertisement that it did not so show, but, on the contrary, the court below found that the sale "was duly advertised to take place under said execution from the clerk of the Supreme Court."

If the sale was duly advertised, it appeared therefrom that such sale was to take place on an execution issued by the clerk of the Supreme Court to the sheriff of the Supreme Court, and by him delivered to the county sheriff. All persons are presumed to know the law, and that such an execution must be executed by the county sheriff, if executed by him at all, as the deputy of the sheriff of the Supreme Court. The county sheriff serves the process as the deputy of the sheriff of the Supreme Court. He is not deputy by appointment, but by operation of law. When he signs his name to a return of service of such process, or to publication notice of sale under such process, he is deputy to the sheriff of the Supreme Court by operation of law, and his character as such deputy may be as well understood by the public from his official designation as county sheriff when the process has been designated and described, as if he should designate himself as deputy of the sheriff of the Supreme Court. This seems to be more clear when it is borne in mind that the county sheriff is liable on his own bond for all acts done by him as such deputy. *McGruder* v. *Russell, Sheriff,* 2 Blackf. 18.

Besides, it has been the universal practice in all cases,

so far as we know, under this statute, where a county sheriff served process directed to the sheriff of the Supreme Court, to sign his name to the return as sheriff of the county, and not as deputy of the Supreme Court sheriff.   Such is the nature of the return to the process in this case, which brought the appellee into this court on this appeal.

It would be an awkward procedure to sue the county sheriff on his own bond for an act done by him as deputy of the sheriff of the Supreme Court, if he did such act in the name of the sheriff of the Supreme Court and not in his own name.   When the county sheriff does an act as the deputy of the sheriff of the Supreme Court, he does it by virtue of his office of sheriff of the county, which office, by operation of law, makes him the deputy of the sheriff of the Supreme Court.   Therefore, when his official character as such county sheriff and the process from the Supreme Court appear, his character as deputy to the sheriff of the Supreme Court, without any designation of himself as the deputy to the sheriff of the Supreme Court, also sufficiently appears.

Even if the contrary condition were right and the advertisement ought to have been signed by the county sheriff as deputy of the Supreme Court sheriff, yet that was but a slight irregularity which can not invalidate the sale, where no injury is shown to have resulted to the execution defendant on account thereof.   *Rose* v. *Ingram*, 98 Ind. 276; *Lowry* v. *Reed*, 89 Ind. 442.

The judgment is reversed at appellee's costs, with instructions to the court below to restate its conclusions of law relating to the sheriff's sale of lot 6 aforesaid, in accordance with this opinion, and to render judgment thereon in favor of appellant Ross.

As to lot 5, the judgment is affirmed.

Filed Sept. 26, 1893.

Ross *et al. v.* Banta.

## On Petition for a Rehearing.

McCabe, C. J.—A very earnest petition for a rehearing has been filed in this case, on the ground that we erred in holding that lot 6 sold for more than two-thirds of its appraised value, and that the appellee Banta was not entitled to any exemption.

These two points have been urged by appellee's learned counsel in no less than ten briefs, and we have carefully read and considered all of them, containing nearly a hundred pages of printed and written matter.

In our original opinion, we set out what was found by the trial court to have been the form of the appraisement. At another place in the special finding, the court stated that "said sheriff * * * , on September 28, 1889, sold at sheriff's sale all the right, title and interest of said Guthrie and Banta in and to said lot 6, to the defendant Ross for the sum of $80, that being more than two-thirds of the appraised value of said lot, over and above the incumbrances thereon."

We treated this as a finding of fact in the original opinion, but counsel contends that it is not a finding of a fact, but a mere conclusion of law or fact, and mere surplusage.

He does not claim that it is a conclusion of law purely, but rather a conclusion of fact based on other facts found as to the appraisement, that is, that part of it which reads, "that being more than two-thirds of the appraised value of said lot over and above the incumbrances thereon."

It is contended that if as a matter of fact and figures $80 is not more than two-thirds of the appraised value of the lot over and above the incumbrances as stated elsewhere in the finding, then the statement that it was

Ross *et al.* *v.* Banta.

more than two-thirds did not make it so as against the other statement. Assuming, without deciding, that this reasoning is correct, we think there is no inconsistency between the two parts of the finding mentioned. The appraisers valued the two lots at $1,500, lot 5 at $400, and lot 6 at $1,100, and stated that there are incumbrances on both of them jointly amounting to $1,100.

It is contended with much seeming earnestness, that no valid sale of either lot could take place unless it brought enough to equal two-thirds of the appraised value of both lots over and above the joint incumbrance of $1,100 resting on both; that would be two-thirds of $400, the excess of the appraised value of both over and above the joint incumbrance; that contention means simply this, because the incumbrance is joint the law has such a tender regard for the poor debtor that it will require the execution creditor to bid enough on his execution sale to pay for two lots and get but one.

The learned counsel in his elaborate briefs finally ran up against this proposition, and attempts to head it off by saying that the bidder must either bid enough on the one lot to buy both, or bid them both in for that sum. But we would like to know how the bidder at a sheriff's sale can bid on a lot or piece of property that is not advertised or offered by the sheriff for sale. The finding shows that nothing but lot 6 was advertised or offered for sale by the sheriff. There is no law requiring a sheriff to levy on and sell more of the execution debtor's property than is needed to satisfy the execution in his hands, even though the property he offers for sale is jointly incumbered with other property of the execution debtor. On the contrary, the statute provides that: "If the estate shall consist of several lots, tracts and parcels, each shall be offered separately; and no more of any real estate shall be offered for sale than shall be neces-

sary to satisfy the execution." 1 Burns R. S. 1894, section 768, R. S. 1881, section 756.

The rule in such a case can not be different from what it would be if the other property subject to the joint incumbrance did not belong to the execution debtor. So that there is no escape from the conclusion, if the appellee is right in his contention, that a purchaser of real estate at execution sale, which is jointly incumbered with another piece of real estate, must pay the price of both in order to make a valid purchase of one piece.

If there is any principle of law or equity that lends any sanction to such a doctrine, we have not discovered it, and the learned counsel has not been able to cite us to it. He does, however, urge in support of the doctrine stated that the established rule in equity being that where several parcels of real estate incumbered by the same lien jointly in the hands of the owner, and separate parcels are sold and alienated at different times, the parcels must be exhausted in the satisfaction of the lien in the inverse order of their alienation, and if any separate parcel or parcels remain unsold, and owned by the debtor, that such portion must be first exhausted for the satisfaction of the joint lien before resort can be had to those parcels alienated, provided the purchaser does not become obligated to pay the lien. That is the rule in this State. *Houston* v. *Houston,* 67 Ind. 276; *Day* v. *Patterson,* 18 Ind. 114; *Williams* v. *Perry,* 20 Ind. 437; *Aiken* v. *Bruen,* 21 Ind. 137; *Alsop* v. *Hutchings,* 25 Ind. 347; *McShirley* v. *Birt,* 44 Ind. 382; *Hahn* v. *Behrman, Exr.,* 73 Ind. 120; *McCullum* v. *Turpie, Admr.,* 32 Ind. 146; *Merritt* v. *Richey,* 97 Ind. 236.

It is insisted that under this rule the whole incumbrance of $1,100 can be forced onto lot 5, because the appellee retains the ownership of that lot, and thus the appellant will secure the title to lot 6, appraised at $1,100, for $80,

Ross *et al. v.* Banta.

which would be less than two-thirds of its appraised value.

But the above rule in equity can not apply in the present case. The law provides that "no property shall be sold on execution   *   *   for less than two-thirds of the appraised cash value thereof, exclusive of liens and incumbrances, except where otherwise provided by law." 1 Burns R. S. 1894, section 744, R. S. 1881, section 732. It was not otherwise provided by law as to the costs for the collection of which the sale was made on execution. Lot 6 could not have been sold on that execution for less than two-thirds of $1,100, the appraised value of the lot clear of the incumbrance.   But it is only what remains of the appraised cash value, after deducting therefrom the liens and incumbrances, that forms the basis of ascertaining what is the two-thirds of the appraised cash value, for less than which such sales are forbidden. While the purchaser at such sales does not obligate himself personally to pay the incumbrance, he does consent that the property shall remain liable primarily for the payment of the incumbrance.   Indeed, the sale to him proceeds upon the theory that so much of the property in value as equals the amount of the incumbrance has been already conditionally sold to the lien-holder, and the purchaser at the sheriff's sale pays for the balance of the property, and thus acquires a right to hold and own it all (there being no redemption) if he will take care of and satisfy the liens and incumbrances. 1 Burns R. S. 1894, section 751, R. S. 1881, section 739.   Equity will not allow him to hold the real estate and force the payment of the incumbrances onto the other property jointly liable in the hands of the original owner or anyone else.

But it is insisted that the appraisement was void because the appraisers did not apportion the incumbrances

on the two lots and fix the amount each should be liable for. The appraisers had no power to do any such thing. Each lot was legally liable for the whole incumbrance, and nothing short of an agreement between parties interested could change that liability. It is further insisted that there was no appraisement because the appraisers failed to deduct the liens and incumbrances. The statute provides that: "They shall * * appraise the property according to its cash value at the time, deducting liens and incumbrances." 1 Burns R. S. 1894, section 746, (R. S. 1881, section 733). This would require them to state its cash value at the time, and also to state the amount of liens and incumbrances, and lastly, to subtract or deduct the amount of such liens and incumbrances from the cash value. This last act, as to lot 6, they did not do; that is, they did not perform the complicated and difficult task of subtracting $1,100 from $1,100. They stated that the cash value of lot 6 was $1,100 and stated that the liens and incumbrances on it and another lot was $1,100. The sheriff and all others concerned in the sale seem to have understood that if $1,100 were deducted or subtracted from $1,100 nothing remains.

They all seem to have understood, and acted upon that understanding, that lot 6 was worth nothing over and above the incumbrances on it, and that understanding was correct in fact and in law. The irregularity of not deducting the $1,100 from the $1,100, if indeed it was an irregularity at all, is so slight that it ought not to vitiate the appraisement and sheriff's sale unless it injured the complaining party. There is no claim even that it worked any injury to the appellee.

It is contended that we erred in holding that appellee was not entitled to $600 worth of property exempt from the execution in this case. We held that the judgment

on which the execution was issued was for costs, and that it had been decided by this court that no exemption is allowable on such an execution, and also by the Appellate Court concerning the same refusal of exemption that the appellee was not entitled to any exemption on that execution. We followed those decisions, and still adhere to that holding.

It.is insisted that appellee was entitled to exemption because when he demanded it the sheriff set off to him as exempt lot 5 and his personal property, and that the sheriff and the purchaser are estopped to deny his right to such exemption. It is contended that these facts constitute an estoppel *in pais* and by record. The doctrine of estoppel *in pais* has no application where everything is equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was not influenced by the acts pleaded as an estoppel. *Fletcher* v. *Holmes,* 25 Ind. 458; *McGirr* v. *Sell,* 60 Ind. 249; *Long* v. *Anderson,* 62 Ind. 537; *Lash* v. *Rendell,* 72 Ind. 475; *Hosford* v. *Johnson,* 74 Ind. 479.

In *Fletcher* v. *Holmes, supra,* this court, appropriating the language of the Supreme Court of New York, said: "A clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which was prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of an estoppel *in pais.*"

Persons who set up acts of another as an estoppel must show that they acted on the same, and were influenced thereby to do some act which would work injury, if such other party is allowed to deny the truth of what he did. *Chaplin* v. *Baker,* 124 Ind. 385.

Here it does not appear that the appellee was in any way influenced by the act of the sheriff in setting off to him lot 5 and his personal property as exempt from execution. It was nothing more than the expression of the sheriff's opinion that the appellee was legally entitled to $600 worth of property exempt from that execution, and it has been held that an expression of an opinion as to the rights of a party does not create an estoppel. *Mitchell* v. *Fisher*, 94 Ind. 108.

Besides, the special finding does not show that the appellant Ross had anything whatever to do with the sheriff's act, and upon no principle of estoppel is he affected by it so as to preclude him from asserting and maintaining the legal rights he acquired by his purchase. There was, therefore, no estoppel *in pais* precluding the appellant from denying the legal right of appellee to exemption.

An eminent author says: "The law of estoppel is the law of rights conferred or fixed in one of three ways, namely, by record, by deed, or by facts *in pais*. The term 'record' signifies, (1) the Legislature's roll, (2) the judgment roll of a court of competent jurisdiction; 'deed,' a contract under seal." Bigelow Estoppel (5th ed.), 3; Herman Estoppel, sections 1, 2.

It is very clear, from this definition, that there was no estoppel by record.

The act of the sheriff in setting off lot 5 and the personal property to appellee as exempt was not the act of a court, and the record of it was not the record of a court; but it was the act of a ministerial officer in the performance of a supposed ministerial duty.

Counsel finally entreat us to modify the mandate, if we overrule the petition for a rehearing, and order a new trial. It follows, from what we have said, that the petition must be overruled. And if we had any doubt as to the result of the new trial, or if we could not see

clearly, from the record, that any other finding than the one in favor of the appellant Ross as to lot 6 could be legally made, we should not hesitate to change the mandate and order a new trial instead of the order to restate the conclusions of law. It being apparent, from the record, that any finding against the appellant Ross as to lot 6 could not legally stand a new trial would be useless, therefore the request to modify the mandate is denied.

The original mandate was the reversal of the judgment, with directions to restate the conclusions of law as to lot 6, in accordance with the opinion and render judgment thereon in favor of appellant. That, of course, necessarily reversed the judgment against Ross for $106 and some cents, and the restatement of the conclusions of law required would leave no foundation for the money judgment against Ross to be again rendered.

The petition is overruled.

Filed Feb. 5, 1895.