Louisville, New Albany and Chicago Railway Company v. Downey.

---

LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. DOWNEY.

[No. 2,036. Filed June 10, 1897. Rehearing denied Sept. 15, 1897.]

APPEAL AND ERROR.—*Special Verdict.—Harmless Error.*—Errors in overruling demurrers to pleadings, when there is a special verdict, are not material, as a correct statement of the law upon the facts found would correct such errors. *p. 145.*

Louisville, New Albany and Chicago Railway Company *v.* Downey.

RAILROADS.—*Construction of in Public Highway.*—The public is not deprived of its easement in a public highway by the admission of a railroad company to the use of such highway.  *p. 150.*

SAME.—*Construction of in Highway.*—*Injury to Person Near Track.*—A railroad company constructed its road bed along and over a public highway, rendering the use of such highway, for vehicles, impossible; but the public continued to use it for a foot way, and on each side of the track a space three feet wide was kept smooth by the company for the use of foot passengers.  D was walking along the foot way and, when at a distance of forty feet from the track, was struck and injured by a cross-tie which fell from a derailed car of a passing freight train, such car being derailed by the negligence of the company.  *Held*, that D was on the public highway, where he had a right to be, and that he could recover from the company for injuries sustained.  *pp. 149, 150.*

From the Owen Circuit Court.    *Affirmed.*

*E. C. Field, W. S. Kinnan* and *Fowler & Spangler,* for appellant.

*J. C. Robinson, Willis Hickam* and *L. U. Downey,* for appellee.

COMSTOCK, J.—Appellee, plaintiff below, brought this action against appellant, defendant below, to recover damages for personal injuries he claimed to have sustained through the negligence of appellant. The complaint avers, in substance, that on March 12, 1893, appellant was a corporation owning and operating a railroad through the town of Quincy, in this State, and on the day named, through its servants and employes, was running a long and heavy loaded freight train over its said road going north through said town; that said train, when going at a rapid rate, had a great momentum, which it was difficult to control, and required for that purpose a full and efficient equipment of trainmen diligent in their business; that a certain box car, a part of said train, was loaded with cross-ties that, by reason of age and long use, and

being constructed of defective and unsound timber and iron, had become weak and rotten and unfit for service; that by reason of negligent management in running the same, and of the defective condition of the spindles, axles, wheels, and the boxing of the axles, the same had negligently been suffered to become heated and otherwise in such condition as to cause great friction and strain upon said boxing, wheels, and axles; that said car was carelessly overloaded, and that the weight thereby imposed caused it to become unsafe, especially when run at a high rate of speed; that said appellant continued to run said car at a high rate of speed, to wit, at forty-five miles an hour, and negligently refused to remove any of its weight or to lessen the speed or to cool the wheels, axles, and boxing, or to lubricate the same in any way, and thereby caused the wheels and axles of said car to break, and to leave the rails of said road at a point two and one-half miles south of said town of Quincy; that at the time said car so left the track, the trainmen so operating the train were all negligently absent from their respective posts of duty, so that none of them learned that the car had left the track, save the conductor and one brakeman, both of whom were negligently in the caboose at the rear of said train, said box car being in the middle of said train, and they were unable to communicate with the engineer in charge of said engine, no means of communication being provided, so that said engineer continued to run said train with said car so derailed at a high rate of speed without any effort whatever to check the speed thereof; that said day was Sunday; that said town of Quincy is a village of 700 inhabitants; that on said day, and all others, said inhabitants were accustomed to, and lawfully did walk in the vicinity of the said railroad, all of which the defendant and its servants well knew; that in the afternoon

of said day, plaintiff was at a point fifteen feet distant from said railway on his way to Sunday school, and that while so walking, without any fault or negligence upon his part, he observed said train approaching, and that said car was derailed, and with all diligence started to run farther away from said road; that when said car had reached a point opposite to him he was struck by the dirt and gravel thrown by said derailed wheels, and was thereby, without any fault on his part, knocked to the earth, and that in attempting to arise and escape further from said cars and from said danger, the said derailed car, by reason of its unsafe condition and loading, and the negligent manner of operating the same, as aforesaid, was caused to break to pieces, and derail and crush other cars, thereby whirling ties, with which the same were loaded, therefrom, and the plaintiff was struck by one of said ties upon the side of his back and crushed and held to the earth until he was carried away; that by reason of being so struck, his body, back, and hips were crushed, and his internal organs were greatly injured; that he was confined to his bed three months, and was permanently injured and suffered great mental and physical pain.

A demurrer to the complaint was overruled, and exception taken. A general denial filed, a trial by jury, a special verdict returned, and judgment rendered thereon in favor of appellee.

The assignment of errors sets out eight specifications. The last four are not referred to in appellant's brief, and are, therefore, waived. Assignments one and two present the same question, attacking the sufficiency of the complaint. Assignments three and four present but one question, namely, that the court erred in not giving appellant judgment on the special verdict. In support of the first and second assignments

of error, appellant contends that while the complaint contains the averment that appellee was free from fault, the particular facts set out control the general averment that he was without fault, and that the complaint does not aver in terms that appellee was at a place when injured where he had a lawful right to be; that it avers simply that he was fifteen feet away from the railroad track when struck, "but whether at that point he was a trespasser upon appellant's property, or there of right, is left by the complaint a pure matter of conjecture."

The correctness of appellant's proposition that the statement of particular facts will control the general averment will not be questioned. Appellant cites *Jeffersonville, etc., R. R. Co.* v. *Goldsmith*, 47 Ind. 43, and *Ivens* v. *Cincinnati, etc., R. W. Co.*, 103 Ind. 27, in each of which cases the complaint was held to be bad, notwithstanding the general averment of freedom from negligence on the part of the plaintiff. In these cases the respective complaints show that each plaintiff was injured while walking upon the railroad track, but did not aver facts that they were rightfully there. In *Jeffersonville, etc., R. R. Co.* v. *Goldsmith, supra,* the complaint contained no averment that the injury complained of resulted without fault of the plaintiff. In the case at bar, the complaint shows that appellee was injured while more than fifteen feet away from the track, and while endeavoring to run still farther from it. The facts are clearly distinguishable in these cases.

We interpret that part of the complaint which avers "that on said day, and upon all other days, the inhabitants thereof were in the habit, and fully accustomed to and lawfully might and did walk in the vicinity of said railroad tracks, and that at all times, and especially on Sunday, great numbers of said citizens of

said village and in its vicinity might and were to be found in the vicinity of said railroad tracks, as they lawfully might be, all of which the defendant and its servants well knew," as intending to emphasize the carelessness of appellant's servants in running the train as they did at that time and place, by showing that they had reason to expect that large numbers of people would be exposed to injury therefrom.

The complaint does not aver that appellee was on the track or right of way of appellant. Appellant's right of way is not mentioned. From the averment as to his position with reference to the railroad track, it cannot be said that he was either a trespasser or licensee. There is nothing inconsistent in the averment of particular facts, and the general averment of freedom from fault. We think that the demurrer to the complaint was properly overruled, but even if the ruling was erroneous, there having been a special verdict, it was harmless. In *Woodard* v. *Mitchell*, 140 Ind. 406, the Supreme Court says: "It has been frequently decided by this court that errors in overruling demurrers to pleadings, when there is a special finding or a special verdict, are not material, as a correct statement or declaration of the law upon the facts found would correct the error, if any there had been, committed in the rulings upon the demurrer." See, also, *Smith, Tr.,* v. *Wells Manufacturing Co.*, 148 Ind. 333; *Scanlin* v. *Stewart*, 138 Ind. 574; *Ross* v. *Banta*, 140 Ind. 120; *Walling* v. *Burgess*, 122 Ind. 299; *State* v. *Vogel*, 117 Ind. 188.

The only other question discussed in the able brief of appellant's counsel is, was the injury inflicted at a place, and under circumstances which imposed a duty upon appellant to protect appellee from its negligence? Appellant contends that at the time appellee

received his injury he was either a trespásser or at best a mere licensee upon appellant's right of way, and that appellant owed him no duty to protect him from its negligence. Was appellee a trespasser? Was he a licensee, using the premises of appellant under such circumstances as excused it from the consequences of its negligence? To answer these questions we must look to the special verdict. The findings present a strong case of negligence on the part of appellant. They show that the injury to appellee was occasioned by such negligence, that the injuries he received were disabling and painful, and that they still continue. The fact, the character, time, and manner of appellee's injuries are clearly found. The findings of the jury disclose that at the time of his injury appellee was walking from the house of one William Davis towards the town of Quincy, on a pathway on the grade, and alongside of the end of the ties of the railroad, and as he saw the train approaching was between a culvert located at the northern edge of the main part of the village and the point where a plank walk from said Davis' house joins the railroad grade. That the pathway on which he was walking was three feet in width, level, almost perfectly smooth, with dry and solid surface, and had been thus maintained ever since the railroad was constructed, a period of nearly forty years. A similar path on the other side of the tracks had been and was in like manner maintained. That these pathways were not such as the road maintained at other places for drainage purposes, but differed from the general construction for mere grade purposes in the particular that these were distinctive pathways adapted to foot travel, while the surface and angle of the grade at other places were such as not to permit of foot travel along the ends of the ties. That the railroad grades and the path alongside of it

connect the two parts of Quincy. That the creek at the north of the main town, known as Brush Creek, forms its north boundary, while across the valley of this creek, 600 yards to the north and west, there is a community of forty or fifty families, known as North Quincy, and a thickly populated farming region in addition, whose only direct way of access at any time to the postoffice, shops, schools, and churches of the main town and to the depot of the appellant's road is along over this grade, and that for a considerable portion of every year this is their only way to said points, because of the frequent overflow of the creek rendering all other ways of access to the town from the north and northwest impassable.

The jury further find that the portion of the grade in controversy was built in 1854, over an old public dirt road that then existed, and had for a long time prior to said date. That this public highway, extending and being over the precise line now occupied by this grade from the bridge to said plank walk, and thence to Greencastle, such road being known as the Bloomington and Greencastle road; that this road crossed Brush Creek over a bridge extending precisely where the present railroad bridge stands; that the old bridge was obliterated by the road, and that the grade or fill of the railroad occupied the line of the old road, and made it difficult, if not impossible, to travel the same by wagons; that after the construction of the railroad on the line so described, the public still continued the use of said highway by all persons traveling on foot and desiring to use the same; that all such persons, for a period of thirty-five years preceding and up to the time of the accident in question, continued, as they had before said railroad was built, to travel on foot over and along the line of said highway from the end of the sidewalk to the town of

Quincy, and for the purpose of such travel, used the pathway heretofore described, being the said pathways on either side of the track; that when the dirt road bridge at Brush Creek was superseded by the railroad bridge, the railroad company constructed and thereafter, until about two years before the date of the accident, "kept and maintained for the accommodation and use of the public for such foot travel, suitable and convenient plank walks upon and along said bridge, which walks were at all times so accepted and so used by the public in the use of the highway." The number of persons so using said walks daily in going to and from Quincy varied from thirty to two hundred.

Some two years before appellee was injured, appellant took up these planks, and put up warning boards, with a plainly printed inscription thereon, forbidding all persons from using the track for foot passage at the risk of being held responsible as trespassers for so doing. The appellee had read this warning notice prior to the date of his injury. When injured he was forty feet distant from the railroad track.

The jury did not, in answer to any interrogatory, find the existence of a right of way of appellant. The use of the phrase "right of way" where it occurs, is merely descriptive of a locality. To illustrate, we give interrogatories forty-eight and fifty-nine, propounded by appellant: "48. Was defendant's right of way at the time of plaintiff's injury, inclosed on both sides with substantial fences extending from Brush Creek bridge northerly to the next highway to the north thereof, and was the same inclosed by wing fences at both ends thereof? Answer. Yes, except at south end and at footbridge north of the water tank." "Interrogatory 59. Was the plaintiff injured by the wreckage of said train while he was on the right of way of the de-

fendant at a point north of the railroad bridge over Brush Creek at or near the said opening in the barb wire fence on the west side of said right of way? Answer. Yes, on the defendant's so-called right of way."

In answer to interrogatory sixty, the jury said that the place at which plaintiff was injured on said right of way was a public highway. The answers to interrogatories forty-eight and fifty-nine, *supra,* are not findings that appellant owned a right of way on which appellee was injured, nor is the answer to interrogatory sixty, *supra,* that the place where he received his injury was a public highway. The jury, however, find that when appellant's train came in view of appellee, and when he started to escape danger from the same, he was walking upon and along a way that had been continuously in use as a public highway for more than forty-five years. This is the finding of a fact.

Briefly stated, the facts as to the right of way are that a railroad is constructed and operated upon a public highway. Its use by vehicles is thereby rendered impossible. The public did not cease at any time to use it as a public highway for travel on foot. Upon both sides of the track, upon that part of the route under consideration, a space three feet wide is kept smooth, level, and solid by the railroad company, which is used by the public as a footway. The railway company has inclosed with fences, but not until thirty years after the construction of its said road, ground on which plaintiff received his injury, and over which an elevated board walk was constructed by a private citizens, connecting his grounds and the railroad, and crossing over the fence built by the railroad company, for the use of the public, with the knowledge of the railroad, without any objection upon its part. That appellee had passed over this elevated walk to said footway at the time of the accident. When the railroad com-

pany has placed any obstruction to the free use on foot of this route it has been disregarded. No title, no right of way is shown in the railroad beyond the limits of its roadbed. There has been no abandonment of the old public highway except for vehicles.

Can it be said, in view of the findings of the jury, that appellee was on the premises of appellant? Was he on private property, or where the public had a right to be?

The railroad company could not oust the public of the use of its highway merely by the construction of its road over its line, nor can title be acquired in ground adjacent to its track by inclosing it with fences, unless the highway was abandoned by the public. The public owned the dirt road; the appellant's road was constructed over it. It has, by the findings of the jury, held on to its right to use the same in the manner appellee was using it at the time he was injured.

The public is not deprived of its easement in a public highway by the admission of a railroad company to the use of such highway. The manner of the public use may be thus modified, but the right is not taken away. The utility of the road for purposes of travel may be so seriously affected as to induce its abandonment by the public, but the mere location and construction of a railroad over an established highway does not, as a matter of law, work an abandonment. As long as the public generally continue to use a highway for purposes of travel, it is not abandoned.

The notice on the warning board read: "All persons are forbidden from using this track for foot passage." While the notice mentions the track, if it extended to the lands inclosed by appellant it would not give the railroad a right it did not already possess, nor deprive the public of one it did possess. It may be

presumed that the railroad company, when it made its track, had a right to do so, but it will not be presumed it had the right to further interfere with the use of the public by the erection of fences or other obstructions. *Croy* v. *Louisville, etc., R. W. Co.*, 97 Ind. 126.

The facts found by the jury show that the appellee, when injured, was on a public highway where he had a right to be; that he was not, therefore, a trespasser nor mere licensee; that the was without fault proximately contributing to his injury; that the negligence of appellant's servants caused his injury.

We find no error. Judgment affirmed.