Clause Printing Press Co. *et al. v.* Chicago Trust and Savings Bank.

---

CLAUSE PRINTING PRESS CO. ET AL. *v.* THE CHICAGO TRUST AND SAVINGS BANK.

[No. 17,822.    Filed May 26, 1896.]

CHATTEL MORTGAGE.—*Collateral Security.*—The maturity and extension of a principal note, before the maturity of a mortgage note held as collateral security for such principal note, do not require an extension of the mortgage to protect the extension of the prin-

cipal note, under a statute requiring the extension of the mortgage within a specified time before the maturity of the debt.

APPEAL.—*Joint Assignment of Error.*—An exception to two separate findings, or conclusions of law, is not available if either conclusion is warranted by the facts.

HARMLESS ERROR.— *Counter-claim.*— To sustain a demurrer to a counter-claim is not available error, where the same facts have been set up and held good as an answer in bar.

From the Elkhart Circuit Court. *Affirmed.*

*H. C. Dodge,* and *Dodge & Hubbell,* for appellants.

*State & Chamberlain,* and *J. M. Vanfleet,* for appellee.

HACKNEY, J.—-The appellee sued the appellants, the Clause Printing Press Company, John J. Clause, William L. Collins and William R. Thrasher, upon a note for $7,500.00, executed by said Clause, payable to his own order and by him endorsed to the appellee, and upon a note for $15,000.00, secured by a chattel mortgage of certain personal property, executed by Clause and delivered to the appellee as collateral security for the former note, said several obligations having been executed in Chicago, in the State of Illinois, and the property covered by said mortgage having been brought from said city to the city of Elkhart, in this State, after the execution of said several obligations. Various rulings were had upon demurrers to pleadings, and issues were formed upon an amended complaint, certain answers and cross-pleadings, and the court rendered a special finding of facts with conclusions of law in favor of the appellee, from which judgment followed for $7,350.00 against said Clause, and a foreclosure of said mortgage as to all of the appellants.

The appellants, the Clause Printing Press Company, and Wilson L. Collins, only, present any question for

decision by this court. The special finding was as follows:

"1st. That on or about the 30th day of March, 1889, the plaintiff and defendant, John J. Clause, entered into an arrangement by which plaintiff was to furnish money to said defendant to carry on its business in the following manner: Said Clause was to make his note to the plaintiff in the sum of $15,000.00, secured by a chattel mortgage upon his stock and machinery, which was to be held by the plaintiff as collateral security for any advancements that might be made by the plaintiff, and for any indebtedness of said Clause that might thereafter accrue to the plaintiff. That for the purpose of obtaining such advancements, said Clause was to make his own notes from time to time to the bank and receive credit on the books of the bank for the amount of such notes, less two and one-half per cent. per month thereon, and said Clause was to check out the amount of such credit as needed, and was to pay his notes by deposits as his business would allow; that such collateral note and mortgage should be renewed from time to time so as to keep it at all times a good and valid security under the laws of Illinois.

"2d. That pursuant to such an arrangement the parties began and continued dealing from the 30th day of March, 1889, until the execution of the note for $7,500.00 sued upon in the complaint, as hereinafter set forth. And the said defendant, to obtain such advancement, executed his several notes to the plaintiff for the several amounts, and payable at the several dates as set forth in the fourth answer of the said defendant Clause filed herein. And the several amounts of interest as stated in said answer were each severally deducted and reserved from such advancements severally at the time that credit for each of said notes was given in the books of the bank.

"3d.   That payments were made from time to time by said Clause to the plaintiff pursuant to such ar- rangement by his deposits of money in the bank, which was applied in payment upon said notes and as each note was fully paid it was surrendered up to said Clause, if not fully paid it was renewed, but the evidence does not show what payments were so made, nor the amount or time of making any such payments, nor the notes so renewed or surrendered and given up, nor the dates of any such surrender, payments, or renewals, except as hereinafter set forth.

"4th.   That on the 23d day of March, 1892, the said Clause executed to the defendant, William R. Trasher, his note for $7,500.00, and as the consideration therefor, the said Thrasher executed and delivered to said Clause his check on the bank for $7,350.00, $150.00 being reserved out of said $7,500.00 as interest at the rate of two per centum per month in advance.   That at the time of the execution of said note, said Clause executed to said Thrasher the note and mortgage for $15,000.00, a copy of which is filed with the complaint and marked 'exhibit B.'   Such note and mortgage were at said time delivered to the defendant Trasher as collateral security for the said $7,500.00 note so given to him.   Said Thrasher delivered the said $15,000.00 collateral note and mortgage to the plaintiff's bank and retained possession of the principal note of $7,500.00 for five months, and collected and received from said Clause as interest thereon each month thereafter in advance $150.00, being at the rate of two per centum per month, and amounting in all to $900.00. Thrasher in said transaction acted for the plaintiff and as its agent.

"5th.   That on the 26th day of August, 1892, the defendant Clause executed, endorsed and delivered to the plaintiff the note for $7,500.00, a copy of which is

filed with the complaint marked 'exhibit A.' Such note was given in renewal of said $7,500.00 note so given to said Thrasher as aforesaid, and at the time of the execution of said note to the plaintiff it was the understanding between said Clause and itself, that said note and mortgage for $15,000.00 which Clause had executed to Thrasher as collateral security, should be thereafter held by the bank in the same manner; and said note of August 26, 1892, so executed to the plaintiff by said Clause, is past due and wholly unpaid, and amounts to $8,900.00, principal and interest to this date.

"6th. That said mortgage for $15,000.00 so executed by the said Clause to the said Thrasher as such collateral security at the time of its date, was fully executed, acknowledged, filed and recorded, according to the laws of Illinois, in the county of Cook, and State of Illinois, where all parties then resided, and the goods and property described in said mortgage were then owned by and in the possession of said Clause in said Cook county, and said mortgage then became and was, and is yet a valid and subsisting lien on such goods and property. That all said transactions heretofore stated occurred in the county of Cook, and State of Illinois. And said John J. Clause, resided in the town of South Chicago in said county, at the time said mortgages were executed.

"7th. That about the 30th day of October, 1892, with the knowledge and consent of the plaintiff, the said Clause removed the said goods and property described in said mortgage to the city of Elkhart, Indiana, and it was the understanding between said Clause and the plaintiff, that if Clause should succeed in procuring the organization of a corporation to take and use said property, and should procure the assignment to the plaintiff of fifty-five per cent. of the stock

of such corporation, the plaintiff would release its said mortgage. That Clause procured the organization of such corporation and sold to it the goods and property described in its mortgage, but did not cause to be assigned to the plaintiff any of its stock, and such goods and property are now in the possession of the defendant, the Clause Printing Press Company, at Elkhart, Indiana, which is the same organization or corporation so procured to be organized by said Clause, and said defendant company executed to the defendant Collins a mortgage on said property as alleged in the complaint, but it is subsequent and inferior to the plaintiff's mortgage.

"8th. That before and at the time said Clause executed said note to Thrasher, and at the time of the execution of the $7,500.00 note aforesaid, the law of Illinois was as follows: 'If any person or corporation in this State shall contract to receive a greater rate of interest or discount than seven per cent. upon any contract, verbal or written, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled to recover only the principal sum due to such person or corporation,' as set forth in defendant's answers and cross-complaint.

"9th. That before the bringing of this action, the plaintiff felt and had just cause to feel insecure, and to fear a diminution of his security, and waste and loss of said property so described in its said mortgage.

"10th. That at the time of the execution of said mortgage, the law of Illinois on the subject of providing for the execution, acknowledgment, extension, filing, recording and renewing of chattel mortgages was, and at the time of trial is, as the same is correctly set out on pages 3, 4 and 5 of the amended complaint.

"11th. That at no time after the execution of and recording said chattel mortgage, did plaintiff or said

Clause, themselves or either of them, or by their agent or attorney, file for record in the office of the Recorder of Deeds of Cook county, Illinois, and with H. R. Brayton, justice of the peace, or his successor, upon whose docket the said mortgage was entered, an affidavit setting forth particularly [or otherwise] the interest which the mortgagee had by virtue of said mortgage in the property therein mentioned, and such an affidavit was not made nor recorded by said recorder of said county, and the same was not entered upon the docket of said justice of the peace or his successor in office.

"12th. That at all times between the said first agreement and the close of their dealings, the said Clause was indebted to the bank in some amount, but the several balances of his amount on its book is not shown.

"Upon the above facts the court states conclusions of law as follows:

"1st. That the plaintiff is entitled to recover on its said note of $7,500.00, the sum of '$7,350.00, and no more, and is entitled to judgment against the defendant, John J. Clause, for such amount.

"2d. That the plaintiff is entitled to foreclose its said chattel mortgage upon the goods and chattels therein described as against all of the defendants herein, and to have such property sold as upon execution to pay its said debt."

There was no exception to the conclusions of law by Collins, and the exception by the Clause Printing Press Company was to such conclusions jointly. The assignment of error upon the conclusions of law, as to Collins, of course, presents no question whatever, and that as to the company is as to the conclusions collectively, and if either is warranted upon the facts

there is no available error upon such conclusions. *Saunders, Treas.,* v. *Montgomery,* 143 Ind. 185.

The provisions of the chattel mortgage laws referred to in finding numbered ten are as follows:

"Section 1.   Be it enacted by the people of the State of Illinois represented in the General Assembly, that no mortgage, trust deed, or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with grantor, and the instrument is acknowledged and recorded as hereinafter directed, and every such instrument shall, for the purpose of this act, be deemed a chattel mortgage.

"Sec. 4.   Such mortgage, trust deed, or other conveyance of personal property, acknowledged as provided in this act, shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded; or in case the mortgagor is not a resident of this State, then in the county where the property is situated and kept, and shall thereupon, if the mortgage is *bona fide,* be good and valid from the time it is filed for record, until the maturity of the entire debt, or obligation, or extension thereof, made as hereinafter specified.

"Provided, Such time shall not exceed two years from the filing of the mortgage, unless within thirty days next preceding the expiration of such two years, or if the said debt or obligation matures within such two years, when within thirty days next preceding the maturity of such debt or obligation, the mortgagor and mortgagee, his or their agent or attorney,

VOL. 145—44

shall file for record, in the office of the Recorder of Deeds of the county where the original mortgage is recorded; also with the justice of the peace or his successor, upon whose docket the same was entered, an affidavit setting forth particularly the interest which the mortgagee has by virtue of said mortgage in the property therein mentioned, and if such mortgage is for the payment of money, the amount remaining unpaid thereon, and the time when the same will become due by extension or otherwise, which affidavit shall be recorded by said recorder, and be entered upon the docket of such justice of the peace, and thereupon the mortgage lien originally acquired shall be continued and extended for and during the term of two years from the filing of such affidavit, or until the maturity of the indebtedness or extension thereof secured by said mortgage: Provided, such time shall not exceed two years from the date of filing of such affidavit."

The first contention by counsel for the appellants is that under finding numbered eleven, in connection with the laws of Illinois, above set out, the mortgage in question lapsed and was void, because of the failure to file and record the affidavit of the extension of the debt, as required by the above quoted proviso. The $15,000.00 note and mortgage were dated and executed March 23, 1892, and were payable one year thereafter; the $7,500.00 note in suit was dated and executed August 26, 1892, was payable in thirty days therefrom, and was in renewal of another note, for $7,350.00, dated and executed March 23, 1892. The contention of counsel upon the proposition mentioned rests upon the theory that the maturity of the principal debt, that evidenced by the note of March 23, 1892, for $7,350.00, and the extension thereof by renewal, as evidenced by

the note of August 26, 1892, required the mortgage
to be extended as if the sum collaterally secured were
the principal debt covered by the mortgage.   Mani-
festly, we think, the statute of Illinois was designed to
prevent long-time mortgages of personal property to
be held as a cover to indefinite and unascertainable
debts, and to require, if the mortgage debts were ex-
tended beyond two years, that the public records
should disclose the new form and amount of the debt
at the time of such extension.   Here the mortgage and
the primary obligation it secured were but for one
year, and both of the transactions collaterally se-
cured by them were executed and matured within
the year during which the mortgage was to
run.   The proposition here under investigation does
not suggest the invalidity, *ab initio,* of the
mortgage, and just how the maturity and renewal
of a collateral debt, or a debt collaterally secured, can
operate to bring to maturity and extend the credit se-
cured primarily by the mortgage, we do not compre-
hend.   If the renewed obligation, so callaterally se-
cured, had been paid the mortgage would have become
released as a collateral security, it would have per-
formed the collateral office, but it would not, there-
fore, have ceased to be a security for the $15,000.00
note, the primary obligation, so far as the mortgage
was concerned.   If creditors of Clause could have been
deceived by the mortgage it could only have been from
its possible invalidity from having no consideration
to support the $15,000.00 note, and not because the re-
newal of the $7,350.00 note had affected it.  'Authority
is cited to the proposition that "Where a note is
pledged as collateral security, under circumstances as
to the original debt which fails to make the pledgee
a holder for value, a renewal of the note is subject to

the objection 'that it involves' a prolongation of the original contract." Colebrook Collateral Securities, section 14. Just what bearing this authority has with reference to the present transaction we do not discover. There is no intimation, in connection with the present inquiry, that the appellee was not a pledgee for value. The same section affirmatively recognizes the conclusion that where a debt collaterally secured is renewed the collaterals may be enforced for the payment of the debt so renewed. We think there is nothing in the appellants' contention upon this proposition.

Though apparently somewhat out of its order, we may suggest that the objection of the appellants to the action of the trial court in overruling his demurrer to the amended complaint, because the latter did not allege a continuation of the mortgage upon the renewal of the $7,350.00 debt, must fail for the reasons just given with reference to the special finding, and we have only gone into the question as made upon the second conclusion of law, for the reason that it clearly presents the same question made upon the demurrer to the amended complaint.

It is next urged that the first conclusion of law is erroneous because of the usury laws of Illinois, which are set out in the eighth finding, and under which a contract for interest or discounts in excess of seven per cent. forfeits all interest and limits a recovery to the principal of the debt. The question urged arises under an answer by Clause, who as shown, raises no question as an appellant, and it rests upon the theory that the $7,500.00 note in suit is the result of, and is infected with the vice of other usurious contracts, extending from March 30, 1889, down to August 26, 1892, something like one hundred transactions, which are alleged to have been pursuant to the understanding be-

tween him and the appellee, as set out in the first finding; that the aggregate of usurious payments exceeds the appellee's demand; that the consideration for the note in suit was the balance of usurious charges, and that there was, therefore, no consideration, in a legal sense. We do not stop to inquire if the Printing Press Company can raise this question, since the special finding discloses affirmatively that the note in suit was a renewal of one executed to Thrasher upon "his check on the bank for $7,350.00," and it is not found that any part of said note included any balance from said numerous transactions, or that any one or more of said transactions entered into it. While it is found that the numerous items of usurious interest and discounts, alleged in said answer, were paid and retained, it is found by the third finding that the evidence does not disclose the renewal of any obligation, except as set forth in succeeding findings, and in the succeeding findings the only renewal stated is that of the note for $7,350.00. The burden of the issue as to usury was upon Clause, and where there is an absence of facts rendering necessary a different conclusion from that reached, the court will indulge presumptions against the party having the burden of proving such facts. It is unnecessary, in our view of the findings, that we should consider the legal question discussed by counsel as to the extent to which a partial usurious consideration will affect the note, nor that usurious payments will not be applied to the discharge of the interest, but will be applied to the cancellation of the principal. If it cannot be said that the transaction in question was made up in whole or in part of the transactions preceding it, and which included unlawful charges of interest and discounts, but if it may stand as an independent transaction, we do not under-

stand the rule to be, nor do counsel contend, that the former transactions could so taint the present as to destroy the consideration therefor. It would certainly be a new rule of equity that would strike down a transaction, not in itself unlawful, because the parties to it had had dealings that were unlawful.

No other objection is made to the first conclusion of law, and having found that it was not objectionable, we are not required, as we have shown, to examine objections to the second conclusion, under the rule that a joint exception fails if any one of the conclusions objected to is proper.

The next assignment of error, in the order as presented by the argument, challenges the action of the trial court in sustaining the appellee's demurrer to the third paragraph of the answer of the Clause Printing Press Company and Collins. The appellee insists that this answer presents no question for consideration in this court; first, because the certificate to the transcript is to the special elements of the transcript without any general statement that these elements constitute all of the pleadings or all of the record; and second, because the sixth answer covered the material features of the third, namely: an agreement between Clause and the appellee that the mortgaged property might be removed to Indiana and sold by Clause to a corporation, to be formed for the purpose of owning and operating it, the purchase-price thereof to be in the stock of the corporation and that the lien of appellee should be relinquished and abandoned; in consideration of which Clause was to turn over to the appellee, as security for the debts in question, the stock issued to him. Appellants make no response to this contention, and, if we should indulge the usual presumptions in favor of the action of the trial court,

taking the silence of the appellants as a concession of the appellee's propositions, we should hold that no question was presented, and that there were pleadings not in the record under which appellants had the benefit of the defense. However, the third and sixth answers differ only in a collateral matter, one alleging the want of knowledge of the mortgage, and the other a reliance upon said agreement between Clause and the appellee as to the removal and sale of the property. Either of these collateral facts depended upon the primary fact, viz.: the agreement. The special finding numbered seven discloses that a hearing was had as to said agreement, and that it was not to the effect that Clause might sell the property, but instead that if a corporation should take and use the property, and should procure the assignment to appellee of fifty-five per cent. of the stock of such corporation, the appellee would release the mortgage.

The hearing and finding disclosed are conclusive that appellants were not harmed by the ruling here complained of.

Appellants complain, also, of the ruling of the trial court in sustaining appellee's demurrer to their counter-claim. Counsel says: "That paragraph proceeds upon the theory that the consideration for the debt claimed to have been secured by the mortgage in suit had been fully paid, setting out in detail the manner in which it had been paid; that manner being, in substance, that the debt was founded upon usury, and that payments had been made sufficient of usurious interest, in a sum in excess of the principal, which payments should have been applied to the principal, and would have thus extinguished it." Counsel for appellee urge that the same facts were pleaded in bar of the action, in a paragraph of answer, to which the

court overruled a demurrer, and that the appellants had the benefit of the facts upon the trial, and were therefore, not harmed by the ruling complained of. This proposition is not questioned by the appellants, and is confirmed by the facts specially found, as well as by an examination of the two pleadings. As we have seen, the same plea was interposed also by Clause, and upon the facts found, as we have held, was not available to diminish or defeat the note in suit.

Finding no available error in the record, the judgment of the circuit court is affirmed.