## McKay *v.* Corwine.

[No. 9,485. Filed May 1, 1918. Rehearing denied November 27, 1918. Transfer denied January 24, 1919.]

1. APPEAL.—*Review.—Harmless Error.—Sustaining Demurrer.*— The error, if any, in sustaining a demurrer to a cross-complaint was harmless, where the facts pleaded therein were the same as those set up by answer, and the issues joined thereon were decided adversely to defendant. pp. 213, 214.

2. MORTGAGES.—*Foreclosure.—Right to Affirmative Defense.—Cancellation.*—In an action on notes and to foreclose a mortgage, defendant had a right to proceed by cross-complaint for cancellation. p. 214.

3. APPEAL.—*Review.—Harmless Error.—Overruling Demurrer.*— Error, if any, in overruling a demurrer to a paragraph of reply was harmless, where it affirmatively appeared that the court found against plaintiff on the issue raised by that paragraph. p. 214.

4. MORTGAGES.—*Foreclosure.—Findings.—Sufficiency.*—In an action to foreclose a mortgage, where defendant answered that she

signed the mortgage as surety, to which plaintiff replied by setting up estoppel, among other affirmative matters, it was proper for the court to include its disposition of such issue in its finding, although the finding was general.  p. 214.

5.  APPEAL.—*Review.—Findings of Fact.—Conclusiveness.*—Where the evidence is reasonably susceptible of inferential facts from which it may legitimately be concluded that a fact was as found by the trial court, its finding may be approved.  p. 219.

6.  HUSBAND AND WIFE.—*Joint Obligations.—Relation of Wife.— Evidence.—Form of Contract.*—Though it appears on the face of a note and mortgage that a wife is a joint principal, such fact is not conclusive in determining the nature of her contractual relation.  p. 220.

7.  HUSBAND AND WIFE.—*Joint Obligations.—Relation of Wife.— Evidence.—Debt of Husband.*—The fact that a note and mortgage represents the debt of the husband is not conclusive in determining whether the wife signed them merely as surety for the husband, as equity will make her a principal to the extent that she contracted for or received, in benefit to her person or estate, the consideration of the contract involved.  p. 220.

8.  HUSBAND AND WIFE.—*Joint Obligations.—Mortgages.—Relation of Wife.—Consideration.*—Where a wife holding property by entireties with her husband signs a mortgage with him, she is a principal if the consideration is applied to the discharge of a valid incumbrance on her estate, and where she enters into such a contract in the belief that she will be benefited either in her person or property, she cannot be relieved of her liability because disappointed in the result.  p. 221.

9.  TRUSTS.—*Principal and Agent.—Property Purchased by Agent with Funds of Principal.—Remedies of Principal.*—Where an agent used the money of his principal to purchase real estate which was held by the agent and his wife in an estate by entireties, the principal by an appropriate action could follow the money into such real estate.  p. 222.

10.  APPEAL.—*Review.—General Findings.—Presumption as to Findings Included.*—In an action to foreclose a mortgage against a widow, who had held property by entireties with her husband and had signed with him a mortgage given in settlement of money due from him, as agent, to his principal, where there was a general finding that she had signed as principal and not as surety for her husband, it will be presumed on appeal in favor of such finding, if the evidence warrants it, that the general finding embraced a finding that the husband had, as agent, used his principal's money in purchasing the mortgaged property.  p. 223.

11. HUSBAND AND WIFE.—*Joint Obligations.—Mortgages.—Relation of Wife.—Evidence.*—In an action against a widow to foreclose a mortgage on property which she had held with her husband by the entireties, evidence *held* sufficient to justify an inference that the mortgagee had reasonable grounds on which to base an action to reach the mortgaged property on a claim against the husband for money due from him, as agent, to the mortgagee, such claim being represented by the mortgage and notes involved, which were executed by the husband and wife. p. 223.

12. HUSBAND AND WIFE.—*Joint Obligations.—Mortgages.—Relation of Wife.—Principal.—Evidence.*—In an action against a widow to foreclose a mortgage on property which she had held with her husband by the entireties, evidence *held* sufficient to sustain a finding that she had signed the mortgage as principal, and not as surety for her husband. p. 224.

13. EVIDENCE.—*Opinion Evidence.—Conclusions.*—In an action to foreclose a mortgage, a question asking whether the witness received any money or other thing of value for signing the mortgage, to which she would have answered in the negative, called for a conclusion, where there was no contention that she received anything other than the forbearance of the mortgagee from attempting to apply the mortgaged property, which was held by her with her husband by the entireties, to a debt of the husband. p. 224.

14. APPEAL.—*Review.—Harmless Error.—Exclusion of Evidence.*—In an action to foreclose a mortgage, error, if any, in sustaining an objection to a question asking whether the witness had received anything of value for signing the mortgage with her husband, was harmless, though the question did not call for a conclusion, where there was no contention that she received anything other than the forbearance of the mortgagee from attempting to apply the mortgaged property, which was held by her with her husband by the entireties to a debt of the husband. p. 225.

15. APPEAL.—*Review.—Harmless Error.—Exclusion of Evidence.*—In an action to foreclose a mortgage which the wife claimed to have signed only as surety for the husband, it was harmless, if error, not to permit the wife to show that in the settlement of the husband's account with the mortgagee his debt was increased by the amount of a certain mortgage, which was assigned to him with the discharge of his indebtedness for one consideration consisting of conveyances and mortgages, including the mortgage in suit, which fact was apparent from the force of the settlement agreement. p. 225.

16. HUSBAND AND WIFE.—*Mortgages.*—*Wife as Signer.*—*Personal Liability.*—Where a wife signs a mortgage and the notes secured thereby as a joint principal with her husband, she is personally liable on the notes. p. 226.

From Marion Superior Court (95,953); *Theophilus J. Moll,* Judge.

Action by Dessie M. Corwine against Martha N. McKay and others. From a judgment for plaintiff the defendant named appeals. *Affirmed.*

*Elmer E. Stevenson,* for appellant.
*Miller & Dowling,* for appellee.

CALDWELL, J.—Appellee brought this action, which is a companion case to *McKay* v. *Corwine* (1918), *post* 238, 118 N. E. 978, against appellant and others to recover on certain promissory notes executed by appellant and Horace McKay, her husband, and to foreclose a mortgage on lot No. 208 in Cross' Trustees Clifford Avenue Addition to Indianapolis, executed to secure the payment of the notes. The lot at the time of the execution of the mortgage was held by appellant and her husband as tenants by the entireties. The husband died before the bringing of the suit. A trial resulted in a finding and judgment against appellant for $746.30, the amount due on the notes, and in a decree foreclosing the mortgage as against all the defendants.

The substance of the pleadings in so far as necessary to a consideration of the questions presented is as follows: The complaint contains the usual averments, and, in addition, that by reason of default in the payment of one of the notes all were due by virtue of a provision of the mortgage to that effect, a copy of which is exhibited with the complaint. Hunt and Hunt, alleged to be subsequent purchasers of the real

estate, and the Capital Lumber Company, alleged to be asserting a lien thereon, were made parties defendant, and named as appellees here. The appeal has heretofore been dismissed as to all the appellees except Dessie M. Corwine.

Appellant answered in four paragraphs: The first a general denial; the second and third, facts to the effect that appellant executed the notes and mortgage as surety for her husband; the fourth paragraph is an amplification of the second and third. Appellant filed also a cross-complaint against appellees repeating the averments of the fourth paragraph of answer, and praying the cancellation of the notes and mortgage, and all other proper relief. Appellee's demurrer to the cross-complaint was sustained.

Appellee filed a reply in four paragraphs, the third being addressed to the second, third and fourth paragraphs of answer. Appellant's demurrer was sustained to the first and second paragraphs of reply, and also to the third as addressed to the third and fourth paragraphs of answer, and overruled as addressed to the second paragraph of answer. The fourth paragraph of reply was a general denial. The substance of the third paragraph of reply was to the effect that Horace McKay died May 9, 1914, leaving no separate estate, real or personal; that he and appellant, his wife, owned real estate as tenants by the entireties of the value of $75,000, of which $10,000 in value was purchased after July 29, 1909; that Horace purchased all of said real estate with his own means, and caused it to be conveyed to himself and wife as tenants by the entireties for the purpose of defrauding his creditors, including appellee; that he did not retain any property wherewith appellee's claim might have been paid at maturity; that appellant knew all

the facts, and that at the decease of Horace she succeeded to all of said real estate by right of survivorship. It is alleged that by virtue of the facts appellant was estopped from pleading suretyship.

It will be observed that the issues submitted for trial were suretyship, formed by the special answer and the general denial replied thereto, and estoppel, if the third paragraph of reply filed to the second paragraph of answer was sufficient to present such issue, a question not necessary to be determined, as hereinafter appears.

It is urged that the court erred in sustaining the demurrer to appellant's cross-complaint. It is conceded in appellant's brief that the matter 1. alleged in the cross-complaint was the same in substance as pleaded by the fourth paragraph of answer. The latter was pleaded in bar of appellee's action, however, while by the former appellant sought affirmative relief. Since the facts pleaded by the cross-complaint were the same as pleaded by the answer, the sustaining of the demurrer of the former did not narrow the investigation. All the evidence that might properly have been heard under the cross-complaint was admissible likewise under the answer. Moreover, if the judgment here was properly rendered against appellant on the issues joined on the fourth paragraph of answer, it follows of necessity that the judgment rendered on the cross-complaint would likewise have been adverse to appellant, had it remained as a pleading in the case. Under such circumstances it is held that the error, if any, is unavailing, because harmless. *Hall* v. *Hedrick* (1890), 125 Ind. 326, 25 N. E. 350; *City of Covington* v. *Ferguson* (1906), 167 Ind. 42, 78 N. E. 241; *Horace F. Wood Transfer Co.* v. *Shelton* (1913), 180 Ind. 273,

101 N. E. 718; *Clause, etc., Co.* v. *Chicago, etc., Bank* (1896), 145 Ind. 682, 44 N. E. 256.

Under some circumstances such an error is held not to be harmless. *Ross* v. *Banta* (1895), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732; *Davis* v. *Brown* (1903), 159 Ind. 644, 65 N. E. 908.

It is our judgment that it was proper for appellant to proceed by cross-complaint for cancellation. She had a right to proceed affirmatively to deter-

2. mine her liability on the notes. However, without passing on certain technical points made respecting the sufficiency of the cross-com-

1. plaint, we hold under authorities above cited, and for reasons above indicated, that the sustaining of the demurrer to the cross-complaint, if error, was not harmful to appellant, and therefore not available.

As above indicated, we do not find it necessary to determine whether the court erred in overruling the demurrer filed to the third paragraph of reply,

3. and in holding that paragraph good in its relation to the second paragraph of answer. It appears affirmatively that the court determined against appellee and in favor of appellant the issue sought to be presented by that paragraph of reply. The court's finding, which was general rather than special, recites that "the court further finds for defendant, McKay, on plaintiff's affirmative reply herein." It was proper for the court to in-

4. clude in its finding, although general, its disposition of that issue. See the following, applicable by analogy: *Roush* v. *Roush* (1899), 154 Ind. 562, 55 N. E. 1017; *Shaw* v. *Barnhart* (1861), 17 Ind. 183; 38 Cyc 1885. It follows that if there was any

error in the ruling on the demurrer to the reply it was cured by the finding.

We proceed to a consideration of the sufficiency of the evidence. This question involves the single inquiry whether in the transaction under investigation the court was justified in determining that appellant was a principal rather than surety. There was evidence to the following effect: Appellee resided in New York; for more than twenty-five years prior to August 24, 1909, Horace McKay, who resided in Indianapolis, was her agent. As such he loaned money for her on real estate security, made collections when due, reloaned the money, sent money to appellee, and received other money from her. In some manner not explained the agency resulted in her acquiring real estate in Indianapolis, it not appearing whether the legal title stood in her name or in Horace's name. In 1909, apparently by reason of failing health, Horace decided to surrender the agency. There had been no full settlement between the parties for a number of years. In the latter part of July, 1909, in response to a letter written the appellee by appellant at Horace's request, she went to Indianapolis with a Mr. Paul, a lawyer, for the purpose of making a settlement. Thomas D. Stevenson, a lawyer, represented Horace. The two lawyers proceeded to audit Horace's accounts pertaining to the agency, and after several weeks' work arrived at an agreement that in addition to four parcels of real estate, the title to which either stood in appellee's name, or that should be conveyed to her, and the value of which does not appear, Horace should account to her for $26,000.85, charging Horace with a Thomas-note hereinafter mentioned. The parties thereupon, after negotiations, caused to be prepared, and on August 25, 1909, executed an

agreement of settlement in substance as follows: The agreement purports to be between Horace McKay and appellee, and recites the fact and the general nature of the agency, Horace's desire to surrender it on account of failing health, that in an effort to settle, differences arose between the parties, which differences they desired to adjust and settle, and that such differences and all matters of every nature between them "are hereby compromised, adjusted and settled on the following basis to wit." There follows a list of notes and mortgages drawn payable to appellee, aggregating $19,023.85, with a recitation that they are her property, but in Horace's possession, and a provision that she shall take them in such settlement at such values; also a description of four parcels of real estate, the values not appearing, with a recitation that such real estate either stands in the name of, or will be conveyed to appellee, and the provision that she will take them on the settlement; a description of a certain note and mortgage executed by Amanda C. Thomas on July 6, 1904, payable to appellee, running five years, with interest, amount $425, with a provision that appellee will assign such note and mortgage to Horace. There follows a provision to the effect that Horace McKay and Martha N. McKay will execute to Dessie M. Corwine their four several promissory notes in the respective sums of $600, $600, $1,800 and $2,500, each running five years, with interest at six per cent., represented by interest notes, each principal note and interest notes thereon to be secured by mortgage on a designated tract of real estate. There is a further provision that Horace shall pay appellee $1,577 in cash. The closing provision is to the effect that its performance shall operate as a release of all claims of every kind and nature

in favor of either party against the other. It is signed only by Horace McKay and Dessie M. Corwine.

The principal note first above mentioned, with certain unpaid semiannual interest notes and the mortgage securing them are involved in this action. These notes executed under the agreement bear the signatures of Horace McKay and Martha N. McKay, there being nothing on the face of the notes to indicate that they signed otherwise than as joint makers. The real estate mortgaged to secure these notes, as we have said, was held by Horace and appellant as tenants by the entireties. The settlement agreement specified that appellee should assign the Thomas note and mortgage to Horace McKay. She assigned these instruments, however, to Horace McKay and Martha N. McKay as husband and wife, on the same day that the settlement agreement was executed. It does not appear why, or at whose solicitation appellant was included as an assignee. Appellant testified that she first learned after her husband's death that she was so included. After Horace's death she collected $80 on the Thomas note, and later surrendered it and the mortgage, then amounting to about $400, as a gift to Amanda C. Thomas, assigning as a reason that the latter was not financially able to pay the note. The release by which she surrendered the mortgage was executed by her both as an individual and as sole heir of Horace McKay.

At the time of the decease of Horace in 1914 he and appellant as tenants by the entireties owned real estate in Indianapolis valued for taxation purposes at $80,530, about $9,000 of which was conveyed to them after the execution of the notes in suit. Six thousand dollars of the $9,000 in value was conveyed

by him to himself and appellant as tenants by the entireties. As survivor, appellant became the owner of all this real estate at her husband's death. Horace owned no personal estate at his death.

Horace, as agent, loaned money for other persons living in the East, besides appellee, and through such agency became indebted to such other persons also. All his indebtedness other than that owing appellee was paid in his lifetime, with funds derived from the sale of real estate held by entireties.

Appellant's relation to the transaction involved here was disclosed principally by her own testimony. She testified in general terms that all the real estate which she and her husband owned at his decease was purchased with her money. inherited from her mother's estate. She did not state definitely the amount of such inheritance, but that she had heard that it was between $70,000 and $75,000; that at her request her husband invested her money in real estate which increased in value; that from time to time tracts were sold and other tracts bought; that for many years prior to 1909 they held all their real estate by entireties; that as tracts were bought from time to time title was taken or soon conveyed to them by entireties; that they so held their real estate to simplify matters in case of the death of either of them, and not for the purpose of defrauding creditors; that her husband was engaged in the real estate business for forty years, and that in such business he handled exclusively the money of his patrons and none of his own; that the real estate held by them in August, 1909, and prior thereto, was purchased with money that came largely from her husband's business and from the sale of their joint real estate; that throughout their married life she and her husband

each carried a small bank account for personal convenience, but that the principal part of their money was carried in a joint bank account against which only joint checks were drawn; that the interest on the various notes representing appellee's claim was paid from time to time by checks drawn on such joint account, some of which checks were drawn by her and some by her husband; that she stayed in her husband's office throughout 1909 until it was closed in October, he being out of the city a large part of the time by reason of failing health; she was present at some of the negotiations leading to the settlement with appellee and knew that the settlement was made.

Mr. Stevenson, who with Mr. Paul audited Horace's accounts as above stated, testified that such audit disclosed a balance due appellee of something like $25,000, but that he and Mr. Paul were unable to determine whether such balance was represented by cash, mortgages, real estate, or what it was, and that they simply reduced the balance to a cash basis, and the agreement of settlement was executed accordingly after negotiations, and that property and cash were taken by appellee to the amount of the balance, as indicated by the agreement.

Under these facts, may it be said that appellant was a principal rather than a surety in her relation to the transaction involved here? It is plain that the evidence as outlined does not conclusively establish that she was a principal. It was the province of the trial court, however, to weigh the evidence. The trial court did so and determined that she was a principal. If the evidence is reasonably susceptible of inferential facts from which it may legitimately be concluded that she was a principal,

then the trial court's determination in this respect may be approved, otherwise not.

On the face of the note she appears to be a joint principal, but the form of the contract is not decisive of her relation to it. *Leschen* v. *Guy* (1897), 149 Ind. 17, 48 N. E. 344. Looking to the settlement agreement, it appears that appellant was not a party to it. That instrument contemplates the debt represented by the notes here, as the debt of the husband rather than the debt of appellant, but that fact is not conclusive. *McCoy* v. *Barns* (1894), 136 Ind. 378, 36 N. E. 134. There is no contention here that at the time of the execution of the agreement of settlement appellant was indebted to appellee. It is not claimed that at that time appellee might have recovered a personal judgment against appellant in an action based on transactions had in connection with said agency. The contention is that appellant's indebtedness to appellee dates from the settlement and the execution of the notes as a part thereof; that the settlement was of such a nature and involved such elements as that appellant was thereby constituted a coprincipal, not only in form, but also in fact. In such a proceeding as this "A court of equity will disregard mere forms, and will not permit a substantial equity to be defeated by the interposition of merely nominal or technical distinctions." *McCoy* v. *Barns, supra.* "Suretyship is a fact collateral to the contract, and arises out of the equities existing between the parties. The test by which to determine the true relation of a married woman to a contract in which she has become a joint promisor with others, is not what relation she agreed to occupy, but what she received, or what she was to receive, in consideration of her promise." *Thacker* v. *Thacker*

(1890), 125 Ind. 489, 25 N. E. 595. To the extent that she contracted for or received, in benefit to her person or estate, the consideration of the contract, she is a principal. *Vogel* v. *Leichner* (1885), 102 Ind. 55, 1 N. E. 554.

If the consideration is applied to the discharge of a valid incumbrance on her estate, she receives the benefit thereof, and is a principal. *Vogel* v.
8.  *Leichner, supra; Security Co.* v. *Arbuckle* (1889), 119 Ind. 69, 21 N. E. 469. The rule seems to be the same where there is a *bona fide* question respecting the validity of the incumbrance, resting on some apparent foundation. *Cupp* v. *Campbell* (1885), 103 Ind. 213, 2 N. E. 565; *Warey* v. *Forst* (1885), 102 Ind. 205, 26 N. E. 87; *Bement* v. *May* (1893), 135 Ind. 664, 34 N. E. 327, 35 N. E. 387.

If she contracts for the purpose and upon the consideration that in her judgment she will be benefited either in her person or property, and thus becomes principal in fact as well as in form, she will not be permitted to say as against the contract that she has been disappointed in the result, and that she is therefore surety. *Vogel* v. *Leichner, supra.*

Applying these principles to the facts here, it appears that in the settlement the Thomas note and mortgage were assigned to Horace McKay and Martha N. McKay, husband and wife. Thereby her interest therein became coequal with that of her husband. *Collyer* v. *Cook* (1901), 28 Ind. App. 272, 62 N. E. 655; *Abshire* v. *State* (1876), 53 Ind. 64.

Appellant, after the decease of her husband, collected $80 on this note, and subsequently surrendered it as a gift to the maker, and by releasing the mortgage, not only as heir of her husband, but also as an individual, she recognized the interest which she ac-

quired under appellee's assignment of it to her and her husband. It would therefore seem, under authorities above cited, that these facts were sufficient to authorize a deduction that appellant was principal to the extent of the value received by her under such assignment.

It is disclosed by the settlement agreement that something in excess of $5,000 of appellee's money was in Horace McKay's hands, representing which he was not able to point to any tangible property, as notes, cash or real estate. As we have said, he and appellant at that time owned a large amount of real estate as tenants by the entireties, some of which had been recently acquired. While appellant testified in general terms that all this real estate was purchased with her money, her testimony on this subject was not clear or satisfactory. She testified also that the money to purchase this real estate came largely from her husband's business and from the sale of their joint real estate. She testified also that in the real estate business her husband handled exclusively the money of his patrons and none of his own. It will be remembered also that Mr. Stevenson, who as Horace's representative assisted in auditing his accounts, testified that such audit disclosed a large balance due appellee, but that it could not be determined definitely from the accounts whether such balance was represented by cash, notes or real estate. At the time of the settlement Horace held in his own name no real estate and practically no personal property. He died not holding in his own name a dollar's worth of property real or personal except a share of stock in each of three clubs, the Columbia, Marion and Commercial, not shown to have any monetary value. At the time of the settle-

ment it is at least doubtful whether any part of the claim represented by the notes here could have been collected in an action against Horace. To that end it would have been necessary to resort to property held by him and appellant jointly or by entireties. A proceeding to collect such claim therefore would have involved appellant to the same extent as her husband. If appellee's money was used to purchase any of the real estate so held by entireties, she, by an appropriate action, could have followed such money into such real estate (*Riehl* v. *Evansville Foundry Assn.* [1885], 104 Ind. 70, 3 N. E. 633); likewise had the acquisition of such real estate amounted to a fraudulent conveyance as against appellee. The liability to such a proceeding directed against property held by appellant and her husband jointly or by entireties, was, for the time being at least, removed by the settlement, and finally, if said settlement had been faithfully carried out by the payment of the obligations then executed. Appellant to the same extent as her husband was the beneficiary of the removal of such liability. The finding here was general, and consequently there was not, and should not have been, a specific finding that appellee's money was used to purchase real estate conveyed to appellant and her husband by entireties, or that any such conveyance was fraudulent as against appellee. If the evidence warrants it, however, we should presume in favor of the court's decision that the general finding includes such elements.

We believe that the evidence was sufficient to justify an inference that appellee had reasonable grounds on which to base an action to reach property held by appellant and her husband as tenants by the entireties, in order that she

might collect the claim represented by the notes here. If so, the settlement here released any such cause of action, and of such release appellant received the benefit. Therefore, looking through form to substance, and regarding the equities of the situation, the evidence was sufficient to sustain the decision that appellant was a principal on the notes in suit. The following have a bearing: *Cupp* v. *Campbell, supra; Bement* v. *May, supra; Morningstar* v. *Hardwick* (1891), 3 Ind. App. 431, 29 N. E. 929; *McCoy* v. *Barns, supra.*

The court sustained appellee's objection to several questions propounded to appellant as a witness by which she was asked in general terms whether she received any money or other thing of value on account of the notes and mortgage in suit. The objection was to the effect that such questions called for conclusions. The offer was in substance that the witness would answer in the negative if permitted. In *Citizens' Bank, etc.* v. *Opperman* (1919), 188 Ind. 212, it is held that a similar question called for a fact rather than a conclusion, and that the trial court properly directed the question to be answered. In that case a certificate of stock owned by a married woman was pledged to a bank to secure a loan then made, and the question was directed to the inquiry whether she received the proceeds of the loan. The record here discloses that under the peculiar circumstances of this case, the trial court regarded that the questions under consideration called for conclusions and not facts, and hence the evidence was excluded. There was no contention at the trial of the case that appellant received anything from appellee at the time of the execution of the notes and mortgage here,

except the Thomas note and mortgage. There was affirmative, uncontradicted evidence, in addition to the settlement agreement, that at the time of the execution of such notes and mortgage by appellant and her husband, appellant was not indebted to appellee, and that the claim that was merged into such notes and mortgage was the husband's debt in the sense that only he was personally liable for its payment. If appellant received anything in value on account of the execution of the notes and mortgage here, aside from the Thomas matter, it was as indicated by us in our discussion of the evidence.

14. There was no other contention at the trial. It is our judgment that as applied to the situation here the questions to which objections were sustained did call for conclusions rather than facts. At any event, the state of the evidence was such that appellant could not have been harmed by the ruling. The court sustained an objection also to a question by which appellant sought to show that the amount of the Thomas mortgage was added to the

15. amount which the audit of Horace's accounts showed to be due appellee from him. We think it is apparent from the face of the settlement agreement that such was the case. By reason of the discharge of the amount due appellee, and her assignment of the Thomas note, one entire consideration consisting of notes and mortgages delivered, other notes and mortgages executed, cash paid and lands conveyed, moved to appellee. We are unable to discover that the ruling was harmful to appellant.

Appellant moved the court to modify the judgment and decree by striking therefrom those elements by

Meridian Life, etc., Co. *v.* Hay—69 Ind. App. 226.

16. which the court adjudged that appellant was personally liable on the notes in suit. The motion was overruled. If, as we hold, the court was warranted in finding that appellant was a principal rather than a surety, there was no error in the ruling.

Judgment affirmed.